**Angelo STERGIOS, Appellant,**

v.

**FOREST PLACE HOMEOWNERS' ASSOCIATION, INC., Appellee.**

No. 05–82–00006–CV.

Court of Appeals of Texas, Dallas.

May 6, 1983.

Diamond J. Pantaze, Dallas, for appellant.

Ronald L. McKinney, Dallas, for appellee.

Before GUITTARD, C.J., and STOREY and VANCE, JJ.

GUITTARD, Chief Justice.

Forest Place Homeowners' Association obtained a mandatory injunction requiring Angelo Stergios and Jack Wojewski to remove a "composition roof" from a house under construction. The roof was alleged to violate a restrictive covenant prohibiting composition roofs in the Forest Place addition. The trial was before the court without a jury, and no findings of fact were made or requested. We hold that the evidence is sufficient to support the court's implied findings that use of the roofing in question is a distinct and material breach of the covenant and that the covenant is not void for ambiguity or as contrary to public policy. We also hold that the suit is not barred by laches, waiver, or estoppel.

In the absence of findings of fact, we must affirm the judgment if it can be upheld on any legal theory supported by the evidence. *Bishop v. Bishop,* 359 S.W.2d 869, 870 (Tex.1962). All fact findings necessary to support the judgment must be implied.

*Goodyear Tire & Rubber Co. v. Jefferson Construction Co.,* 565 S.W.2d 916, 918 (Tex. 1978).

### *"Distinct and Substantial" Violation*

In the light of these rules, we consider defendant's contention that there is no evidence to support an implied finding that defendants committed a distinct and substantial violation of the restrictive covenant, and, in the alternative, that this implied finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

The recorded covenants and restrictions applicable to buildings in Forest Place addition included the following: "No composition roof shall be allowed on any dwelling." When this controversy arose, defendant Wojewski was in the process of building a house in the addition on a lot owned by defendant Stergios. One of the neighbors was A.J. Beck, president of Forest Place Homeowners' Association. When Wojewski began installation of the roof, Beck noticed a stack of roofing material on the Stergios lot. Beck recognized the material as "composition" roofing and immediately contacted both Wojewski and Stergios, advising that the roof was in violation of the restriction.

Beck testified that "composition" roofing, as opposed to natural materials, is a manmade aggregate of materials composed of asbestos fiber, glass, or granules of one type or another. Other types of roofing, he said, would include shakes, shingles, seamed copper, galvanized metal, aluminum, and slate. He identified a specimen of discarded material he picked up from the Stergios lot as a piece of composition roofing material. The specimen was introduced in evidence and is included in our record.

The association also presented the testimony of a roofing contractor, Garland Weatherford. Weatherford testified that a "composition roof" is also known as an asphalt shingle roof and that the specimen in question was made of asphalt with an underlying layer of organic felt composed of

rags or wood. On cross-examination he conceded that the specimen is made with fiberglass rather than organic felt and that it is high-quality roofing, superior to wood shingles from the point of view of fire safety.

According to Weatherford, a galvanized metal roof is even more fire resistant, but would cost twice as much and would require a change in the supporting structures. He recognized aluminum shakes and tile as other alternatives, but admitted that they also would be more expensive and would require changes in the substructure.

Defendant Wojewski testified that the building, which he designed, had a shed roof with a relatively low pitch inappropriate for wood shingles. He would not recommend a metal roof because of the cost, increased maintenance, poor energy conservation, and lack of harmony with other houses in the addition. According to Wojewski, the roof in question cannot be seen from the street, but can be observed from one side. After a year, he said, the roof looks the same from a distance as wood shingles because the gray color is similar to that of weathered wood.

In support of their contention that the evidence fails to establish a distinct and substantial breach of the restriction, defendants rely on *Townplace Homeowners' Ass'n v. McMahon,* 594 S.W.2d 172 (Tex.Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.), and *Hoyt v. Geist,* 364 S.W.2d 461 (Tex.Civ.App.—Houston 1963, no writ), in which judgments denying injunctive relief were upheld. In *Townplace,* the jury found that the use of vertical fir siding rather than horizontal yellow pine siding did not constitute a material and substantial violation of the restrictions in question. In *Hoyt,* the appellate court seems to have based its decision on an implied finding that the defendant's use of the property for business purposes was incidental to its use as a residence. Neither opinion can be taken as a holding that the same evidence would not have supported injunctive relief if contrary findings had been made, as in the present case.

We need not consider whether a denial of injunctive relief, as in the cases cited, would have been supported by the evidence in this record. Our review of the evidence summarized above and our examination of the specimen of roofing material included in this record have convinced us that the evidence raises at least a fact issue as to whether use of the material in question was a distinct and substantial breach of the restriction. The fact that in this instance the material used may have been preferable to other materials for one reason or the other is not controlling so long as the restriction itself has a reasonable basis. Neither is the difficulty of observing the roof from the street or recognizing the material at a distance a controlling circumstance. The evidence shows that the roof is unquestionably a "composition roof" and covers the entire structure. Consequently, we hold that the evidence is sufficient, both legally and factually, to support the trial court's implied finding of a distinct and substantial violation of the restriction.

### Injury or Damage

Defendants also complain that the association failed to show any injury or damage resulting from the violation. We conclude that the association has no such burden. When a substantial breach is established, no particular damages or injury to the plaintiff need be shown. *Ireland v. Bible Baptist Church,* 480 S.W.2d 467, 469– 70 (Tex.Civ.App.—Beaumont 1972), *cert. denied,* 411 U.S. 906, 93 S.Ct. 1529, 36 L.Ed.2d 195 (1973); *Protestant Episcopal Church Council v. McKinney,* 339 S.W.2d 400, 403 (Tex.Civ.App.—Eastland 1960, writ ref'd).

### Public Policy Concerning Wood Shingles

Defendants further contend that the restriction is void as against the public policy of the State, as expressed in article 1293c, Texas Revised Civil Statutes (Vernon Supp.1983) which provides:

To the extent that a deed restriction applicable to a structure on residential property requires the use of a wood shingle roof, it is void.

Defendants recognize that this statute was not enacted until after the roof in question was built. They insist, however, that the practical effect of the judgment would be to require installation of a wood-shingle roof contrary to the policy underlying the statute, since a metal roof or any other alternative would have practical disadvantages under the circumstances revealed by this record. We cannot agree. The practical disadvantages of other alternatives to wood shingles for a structure of a particular design do not establish that the restriction in question is void. Neither article 1293c nor the policy behind it can properly be extended that far. Moreover, whether the practical effect of enforcing the restriction in this case will be installation of a wood-shingle roof is not so clear from the evidence as to be established as a matter of law. Consequently, we cannot say that enforcement of the restriction is against the public policy declared in article 1293c.

### Ambiguity of "Composition Roof"

■ Defendant also contend that the term "composition" is ambiguous and that established rules of construction require it to be interpreted so as to allow free use of the property. We cannot agree. It is clear from the evidence that a roof composed principally of asphalt with a fiberglass base, such as the specimen in evidence here, is generally understood in the roofing trade to be a "composition roof." There is no evidence that the term has more than one meaning as applied to the facts of this case.

■ For the same reason we reject defendants' contention that the mandatory injunction ordering removal of "the composition roof" is too vague to be enforced under rule 383 of the Texas Rules of Civil Procedure. The identity of the particular roof to be removed is entirely clear.

### Laches, Waiver, and Estoppel

Finally, we must consider defendants' contention that the association's suit for mandatory injunction is barred by laches, waiver, and estoppel. These points require further review of the evidence.

Both Stergios and Wojewski testified that they were familiar with the restrictions when they designed the house. The restrictions provide also that no structure shall be erected until the construction plans have been submitted to and approved in writing by an architectural control committee, whose members are named. Wojewski testified that he did not submit the plans to the committee because when he attempted to talk with a member of the committee "they refused to talk" with him. (An objection to this testimony was sustained, and defendants did not pursue the matter by bill of exceptions or otherwise.) Defendants then proceeded with construction of the house without further attempts to submit plans to the committee. Construction of a swimming pool began in November, 1980, and ground was broken for the main structure on January 18, 1981. The roofing material was delivered to the site on February 19 or 20, and the roofing contractor began work on February 21. A.J. Beck, the association's president, first noticed the material and attempted to contact defendant on February 24. At that time less than half of the roof had been completed. Beck met with Wojewski the next day. Wojewski expressed his intention to get the restrictions removed by a vote of seventy percent of the association members, as permitted by the restrictions. According to Beck, Wojewski promised to furnish a letter stating that if he failed to obtain the necessary vote, he would comply with the restrictions. Beck testified that he met with both Wojewski and Stergios on February 26. Stergios stated that he wanted a composition roof, but did not wish to offend his new neighbors, and that he would comply with the restrictions if the members of the association would not agree to change them. Meanwhile, the roofing contractor continued working and finished the roof on or about the 28th. Neither Wojewski nor Stergios provided such a letter, and no vote of the members was taken, although Beck furnished a list of names and addresses. Neither Stergios nor Wojewski appeared at a meeting of the association at about that

time, although Stergios, as a member of the association, had received a written notice. Beck later employed an attorney, who filed suit on March 16. He did not sue earlier, he said, because he relied on the assurance of Wojewski and Stergios that a letter promising compliance would be given.

Wojewski's testimony is substantially the same as Beck's except that he said the roof was completed on February 26, and he denied assuring Beck that a letter promising compliance would be given. He said that he heard nothing about such a letter from Beck until the following week. According to Wojewski, he told Beck that he could not furnish the letter and referred him to Stergios. He also testified that the cost of replacing the roof would be approximately $20,000.

Stergios testified that after the roof was finished Wojewski advised that Beck had requested a letter concerning compliance with the restrictions, but Stergios told Wojewski that the matter was up to him and Beck and that he did not want to get involved.

Defendants' claim of laches, waiver, and estoppel are all based on the theory that the association's failure to enforce the restrictions more promptly caused defendants to change their position in reliance on their understanding that the restrictions were no longer in effect and would not be enforced. They argue that they were misled by the refusal of the architectural committee to review their plans, by the failure of the association to make an investigation to determine whether the plans had been approved after construction began in November, and by the failure of the association to notify them of the violations until February 24, when the roof and its trusses and subroof were substantially completed. Defendants insist that the mandatory injunction is inequitable in view of the substantial cost of compliance.

■ This evidence does not establish laches as a matter of law. Laches is an affirmative defense consisting of two elements: (1) unreasonable delay in asserting a legal or equitable right, and (2) a good faith change of position by another to his detriment because of the delay. *City of Fort Worth v. Johnson,* 388 S.W.2d 400, 403 (Tex.1964). The party asserting laches has the burden of proving both of these elements. *Id.; Mandril v. Kasishke,* 620 S.W.2d 238 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.). No unreasonable delay can be charged against the plaintiff until his cause of action has matured or his right has been repudiated. *Dessommes v. Dessommes,* 505 S.W.2d 673, 677 (Tex.Civ.App. Dallas 1973, writ ref'd n.r.e.).

■ In the light of the authorities we cannot agree that the association's failure to enforce the restrictions against constructing a building without prior approval of plans by the architectural committee establishes, as a matter of law, an unreasonable delay in enforcing the specific covenant forbidding composition roofs. The testimony covering the committee's failure to consider the plans was not developed. In view of the trial court's exclusion of this evidence, we have no information concerning the committee's reason for refusing to talk, if it did. Certainly, there is no evidence that any member of the committee did or said anything indicating that the recorded restrictions were no longer in effect. The record is clear that defendants made no further inquiry of the association as to whether the restrictions were in force, but proceeded with construction of the house and began construction of the composition roof, knowing that the plans had not been approved or even formally submitted and that the roof was in violation of the express prohibition in the restrictions. Beck's testimony shows that he notified defendants of the violation as soon as it came to his attention. Beck's testimony also supports the inference that any delay after that time in filing the suit was caused by Wojewski's assurance that defendants would comply with the restrictions. In the light of this evidence we cannot say that the defendants were induced to change their position by any unreasonable delay on the part of the association in taking action to enforce the restrictions.

Defendants' principal argument seems to be that the association, or its architectural committee, had a duty to investigate any construction undertaken in the addition and to give warnings to the property owner of any violation that such an investigation might reveal. We are not persuaded that a property owner desiring to disregard deed restrictions is entitled to cast this burden on his neighbors. It is more reasonable to conclude that the burden is on the property owner to use reasonable diligence to determine whether any restrictions are still in force before deliberately disregarding them. The evidence here would support an implied finding that defendants failed to use such diligence. The evidence indicates further that after defendants received the association's objection, they gave assurances that they would comply with the restrictions if they were unsuccessful in obtaining a modification by the required number of property owners, but that they continued with the prohibited construction and never sought such a modification. In view of this conduct, the court was justified in denying the equitable defense of laches and in issuing a mandatory injunction requiring removal of the offending roof.

Similar considerations apply to the defenses of waiver and estoppel. Estoppel, like laches, includes an element of change of position in reliance on the conduct of other parties. *See e.g. Bocanegra v. Aetna Life Ins. Co.,* 605 S.W.2d 848 (Tex. 1980); *Barfield v. Howard M. Smith Co. of Amarillo,* 426 S.W.2d 834 (Tex.1968); *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929 (1952). We find that defendants failed to establish such reliance as a matter of law. Waiver requires an intentional relinquishment of a right or conduct inconsistent with asserting such a right. *Texas P. Ry. v. Wood,* 145 Tex. 534, 199 S.W.2d 652 (1947). Conceivably, the association, by failing to object to construction of the house without previous approval of the plans, may have waived this particular requirement, but such a waiver would not necessarily be a waiver of the express prohibition of composition roofs. At best, the evidence would support an implied finding that the latter restriction was not waived. Consequently, we hold that neither of these defenses are established as a matter of law.

We have considered defendants' remaining points of error and find them to be without merit.

Affirmed.