**Frank and Deborah PILARCIK,<br>Appellants,**

v.

**James R. and Susie EMMONS, Preston and Fern Hasty, Doug Johnson, Jim Kern, Kelly and Susan Jones, Mike and Kathy Kobos, and Troy and Nell Radford, Appellees.**

No. 2–94–241–CV.

Court of Appeals of Texas,<br>Fort Worth.

June 13, 1996.

Rehearing Overruled Sept. 19, 1996.

L. Kelly Jones, Bryan, Thomas and Cannon, Arlington, for appellants.

G. Dennis Sheehan, Matthew D. Goetz, Craig M. Price, Fort Worth, for appellees.

Before RICHARDS, J., and RON CARR and CARLOS CADENA, JJ., (retired), Sitting by Assignment.

## OPINION ON REHEARING

RON CARR, Justice (Assigned).

Appellants' motion for rehearing is denied. However, our opinion and judgment of January 11, 1996 are withdrawn and the following opinion is substituted in its place.

This is an appeal from a summary judgment in a restrictive covenant enforcement[1] case, which arose out of a lawsuit over the replacement by appellants Frank and Deborah Pilarcik of the roof on their residence with a composition-type shingle roof. Appellees James R. and Susie Emmons, Preston and Fern Hasty, Doug Johnson, Jim Kern, Kelly and Susan Jones, Mike and Kathy Kobos, and Troy and Nell Radford sued the appellants alleging that their installation of a composition shingle roof on their residence was a violation of the Waterwood Estates roofing restrictions. The appellants counterclaimed against appellees pointing to appellees' alleged multiple violations of the restrictions. The appellants filed a motion for partial summary judgment seeking a declaration by the trial court that the installation by the appellants of the composition shingle roof was approved by the subdivision's Architectural Control Committee and was, therefore, not a restriction violation. The trial court denied the appellants' motion for partial summary judgment. Appellees filed a motion for summary judgment as to their claim against the appellants for violation of the restrictions. The trial court granted appellees' motion and entered a partial summary judgment in favor of appellees. Appellees then filed a motion for summary judgment as to the appellants' counterclaim. The trial court granted appellees' motion and entered a final summary judgment in favor of appellees. From this final summary judgment appellants raise three points of error contending that the trial court erred (1) in granting appellees' motion for summary judgment as to their claim against the appellants; (2) in granting appellees' motion for summary judgment as to the appellants' counterclaim; and (3) in denying the appellants' motion for partial summary judgment.

Because we find that the appellants violated the restrictive covenant when they installed a composition roof, we affirm the trial court's judgment.

*Summary Judgment Evidence*

The summary judgment evidence shows that all of the parties reside in Waterwood Estates, a residential subdivision in the City of Arlington, Tarrant County, Texas. Waterwood Estates is subject to certain restrictive covenants regarding roofing on Waterwood Estates residences. Waterwood Estates was built-out, or completely developed, with all but one of the eighty-nine residences in the subdivision being completed in the early 1980's.

The subdivision covenants provide for an Architectural Control Committee ("ACC") consisting of five members. The ACC was given specific authority relating to approval of construction plans, specifications, and site locations for homes within the Waterwood Estates, as well as enforcement, application, and waiver of the restrictive covenants. The ACC is long dormant, having not met since at least early 1980. In 1992, no quorum existed for the ACC to take action because only two of the ACC members originally named in the covenants contended that they still served on the ACC and no successors had been designated. All members of the ACC named in the original covenants were employees of Dallas Federal Savings and Loan Association.

Appellants purchased an "existing home" in Waterwood Estates in February of 1992. Appellants' deed to their property makes specific reference to the restrictive covenants. After a 1992 hail storm damaged the neighborhood, several homeowners in the Waterwood Estates openly proposed the use of composition-type roofing materials to replace their damaged roofs.

The Waterwood Estates Homeowners Association held a meeting on May 21, 1992 for the sole purpose of discussing the proposed use of composition roofing materials. Appellant Deborah Pilarcik attended this meeting. At this meeting, appellee Kelly Jones, among others, advised the assembled homeowners, including the appellant, that the use of composition-type roofing materials violated the restrictive covenants and that he would seek

---

1. In this opinion, we refer to the original and amended covenants that are at issue in the singu-   lar.

to enforce the covenants' prohibition against composition-type roofing materials. Further, on or about May 22, 1992, appellee Jones prepared a letter to each Waterwood Estates homeowner concerning composition-type roofing materials, his interpretation of the applicable law, and his intent to enforce the restrictive covenants. Appellants' actual knowledge of the amended covenants' prohibition is shown by their attempt to amend the amended covenants to allow the use of composition-type shingles when they signed a petition to that effect that was circulated in the Waterwood Estates neighborhood during the summer of 1992. The petition was rejected by the Waterwood Estates homeowners.

On September 3, 1992, appellants mailed a letter to each of the five ACC members named in the original covenants, seeking permission to use composition-type roofing materials on their residence. These letters were mailed to the 14-year-old addresses shown on the 1978 covenants. Appellants received no response to these letters because they were returned as undeliverable. Appellants undertook no further efforts to obtain approval from the ACC prior to beginning their installation of the composition-type shingles on January 5, 1993. Contrary to the restrictive covenants, appellants did not submit any plots, plans, or specifications to the ACC for review and approval.

Appellees first became aware of appellants' use of composition-type shingles on January 7, 1993. That same evening, appellee Jones contacted appellants to discuss their use of composition-type shingles, and his intent to enforce the amended covenants. In this discussion, appellant Frank Pilarcik indicated to appellee Jones that he knew litigation would result from his actions. The underlying lawsuit in this action was filed and served upon appellants on January 8, 1993. After appellants were served with process, appellant Frank Pilarcik forwarded a second letter of request for permission to the old ACC members named in the original covenants. Appellants received no responses to their letters, as all five letters were again returned as undeliverable.

Approximately one week after having been sued and served with process, appellants called one of the old ACC members, and received from that member approval for their use of composition-type shingles.

*Standard of Review*

The purpose of summary judgment is not to deprive litigants of their right to trial by jury, but to permit the trial court to dispose of patently unmeritorious claims and untenable defenses. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n. 5 (Tex. 1979); *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). Because summary judgment is a harsh remedy, the presumptions weigh heavily in favor of the nonmovant on appeal. This is evidenced by the standards of review for a summary judgment case:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

A movant is entitled to summary judgment if it established that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993).

*Appellees' Motion for Summary Judgment against Appellants*

■■■ The specific language from the amended covenants at issue is as follows:

[I.]

9. *Roofs of composition type shingles will not be permitted.* All roofs and dwellings or accessory buildings shall be constructed with wood shingles, unless an al-

ternate roofing material is approved by the Architectural Control Committee.

. . . .

## II. RIGHT TO ENDORSE RESTRICTIONS

1. . . . The Architectural Control Committee shall have the right to waive any restrictions herein provided insofar as the same pertains to type of roof or quality of masonry to be used provided that the appraised value of the *proposed* house is not less than $50,000.00.

[2.] Procedure: Committee's approval or disapproval as required by this covenant *shall be in writing.* In the event the Committee or its designated representative fails to approve or disapprove within 30 days *after plat, specifications and plot plan have been submitted to it* or in any event if no suit to enjoin the construction has been commenced prior to the completion thereof, approval will not be required and the restrictive covenants herein contained shall be deemed to have been fully complied with. [Emphasis added.]

Texas courts will construe an entire document so that none of its provisions is rendered meaningless. *Imperial Interplaza II, Inc. v. Corrections Corp. of Am., Inc.,* 717 S.W.2d 422, 424 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Memorial Hollow Architectural Control Committee v. Mapes,* 610 S.W.2d 230, 232 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ). In construing a restrictive covenant and its impact, the words and phrases used will be given their ordinary and commonly accepted meanings. *Imperial Interplaza II, Inc.,* 717 S.W.2d at 424.

Furthermore, specific and exact terms are given greater weight than general language. *Silver Spur Addition Homeowners v. Clarksville Seniors Apartments,* 848 S.W.2d 772, 775 (Tex.App.—Texarkana 1993, writ denied); RESTATEMENT (SECOND) of CONTRACTS § 203 (1981). Thus, as a matter of law, the specific language in article I, paragraph 9, "[r]oofs of composition type shingles will not be permitted" will be given greater weight than the subsequent general language regarding waiver.

Appellants' proposed interpretation would require us to ignore the express and direct prohibition against composition-type shingles language contained within article I, paragraph 9 of the amended covenants. Under appellants' proposed interpretation, if the ACC has the ability to waive any and all types of roofing materials, then the specific, direct, and unconditional prohibition against composition-type shingles becomes completely meaningless. Following the above authorities, this interpretation is a construction that we will avoid.

A more reasonable interpretation, which follows the above rules of construction, is to give intent to the entire document, as opposed to selective provisions. This global view validates the direct and express prohibition of article I, paragraph 9 against the use of composition-type shingles.

This view is also consistent with the authority given to the ACC to approve the use of materials other than the required wood shingles, as specified in the remainder of article I, paragraph 9 and in article II, paragraph 1 of the amended covenants. As a result of this construction, full recognition is given to the specific and express language barring composition-type shingles, without damage to the general language allowing the ACC to waive or authorize the use of roofing materials other than wood—so long as they are not the prohibited composition-type materials.

Additional rules of construction have been added to the Property Code by the Texas Legislature, effective June 1987, which apply to "all restrictive covenants regardless of the date on which they were created." TEX. PROP. CODE ANN. § 202.002(a) (Vernon 1995). A restrictive covenant must now be liberally construed to give effect to its purposes and intent. *Id.* § 202.003(a); *Candlelight Hills Civic Ass'n v. Goodwin,* 763 S.W.2d 474, 477 (Tex.App.—Houston [14th Dist.] 1988, writ denied). The covenant should not be hedged with strict construction, but shall be given a liberal construction to carry out its evident purpose. *Id.* at 477.

All residences were required to be constructed with wood shingles, unless "an alter-

nate roofing material" was approved by the ACC. In no event, however, were composition-type roofing materials to be utilized. Article II clearly explains the procedure by which the ACC could approve an "alternate" roofing material other than wood, but in no event would composition-type shingles be allowed. This is the only construction that gives meaning to the entire document without rendering any portion of it meaningless.

In granting appellees' request for temporary injunction, the trial court noted that the intent of the developers must be determined at the time the amended covenants were signed. The developers' agreement that no composition roofs would be allowed under any circumstances is evidenced by their subsequent conduct.

The developers' intent contained in the entire amended covenants was demonstrated during the build-out of Waterwood Estates. During that time, most of the residences were built with the required wood shingles, a few were built with "alternate" roofing materials, but none were constructed with the prohibited composition-type roofing materials.

We first conclude that the trial court was correct in determining as a matter of law that the Waterwood Estates restrictive covenants language unambiguously prohibits composition-type roofs and that the ACC named in the covenants has no authority to waive such direct prohibition.

■ In addition, even if appellants were correct in their interpretation that under the covenants the ACC has the authority to waive the prohibition against composition-type shingle roofs, appellees are still entitled to summary judgment in their favor on this issue because appellants failed as a matter of law to properly comply with the covenants' required procedure.

The covenants detail a specific procedure to obtain an ACC waiver of the covenants for proposed homes. That procedure, as outlined in the covenants, requires that the homeowner must submit "plat, specifications and plot plan" to the ACC for approval. The uncontroverted summary judgment evidence is clear that appellants did not submit to the ACC any "plat, specifications and plot plan" regarding their existing home or their roof replacement.

In *Stergios v. Forest Place Homeowners' Ass'n, Inc.*, 651 S.W.2d 396, 402 (Tex.App.—Dallas 1983, writ ref'd n.r.e.), the court held the property owner to the duty to use reasonable diligence to determine whether any restrictions were still in force before deliberately disregarding them. Failure to do so subjected the property owner to court action to enforce the restrictions, which resulted in the court issuing its mandatory injunction to remove the composition-type roof. *Id.*

■ We conclude as a matter of law that appellants did not use due diligence as required by *Stergios*. Appellants proceeded to replace their roof with composition-type shingles with actual knowledge that (1) plans, plats, specifications, and plot plan were not submitted to or approved by the ACC; (2) the covenants contain a provision which expressly states that "roofs of composition type shingles will not be permitted"; (3) the homeowners of Waterwood Estates had refused to amend the covenants to allow the use of composition-type shingles; (4) several homeowners had publicly and in writing indicated to appellants their intent to enforce the deed restrictions relating to composition-type shingles; and (5) litigation regarding their use of composition-type roofing materials was likely.

■ Appellant contends appellee Jones testified in the temporary injunction hearing that only ten percent of the homes in the subdivision had wood roofs. We disagree with appellant's assertion that this testimony raises a fact issue of whether the covenants relating to composition-type roofing materials have been abandoned or waived. We disagree because we do not agree with appellants' reading of Jones' testimony, which amounts to a repeated "I don't know."

■ To establish a waiver, appellants' conduct or the Waterwood Estates subdivision must fall under one of two distinct rules of law:

(a) homeowners have acquiesced to such substantial violations within the restricted area as to amount to an aban-

donment of the covenant or a waiver of a right to enforce it; or

(b) there has been such a change in the conditions in the restricted area or areas surrounding it that it is no longer possible to secure any substantial degree of the benefits sought to be realized through the covenants.

*Cowling v. Colligan,* 158 Tex. 458, 312 S.W.2d 943, 945 (1958); *Traeger v. Lorenz,* 749 S.W.2d 249, 250 (Tex.App.—San Antonio 1988, no writ). Among the factors to be considered are the number, nature, and severity of any then-existing violations, any prior acts of enforcement of the restrictions, and whether it is still possible to realize to a substantial degree the benefits intended through the covenant. *New Jerusalem Baptist Church, Inc. v. City of Houston,* 598 S.W.2d 666, 669 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). In *New Jerusalem Baptist Church, Inc.,* the court found four nonconforming uses, and at least one recent act of enforcement, to reach its holding that an average person would realize that the homeowners have not abandoned or waived the covenants, and in fact, intended to enforce them. *Id.* at 669.

Here appellants had to raise a fact issue by summary judgment evidence that the composition type roofing violations then-existing were so great as to lead the mind of an "average man" to reasonably conclude that the restriction in question had been abandoned and its enforcement waived. Without any summary judgment evidence on the number or severity of any then-existing composition type roofing violations, appellants waiver and abandonment arguments fail as a matter of law.

Appellees' action against appellants is not barred by laches as the result of any delay on appellees' part. Laches is an affirmative defense consisting of two elements: (1) unreasonable delay in asserting a legal or equitable right, and (2) a good faith change of position by another to his detriment because of the delay. The party asserting laches has the burden of proving both of these elements. *City of Fort Worth v. Johnson,* 388 S.W.2d 400, 403 (Tex.1964); *Stergios,* 651 S.W.2d at 401.

It is undisputed that appellees did not learn of appellants' use of composition-type shingles until January 7, 1993 and that appellees then filed suit and served appellants *within 24 hours.*

Appellants argue that because they had roofing material in their yard, since December 20, 1992, the appellees should have been on notice that appellants intended to use the prohibited, nonconforming roofing material. However, the summary judgment evidence establishes that appellees proceeded as quickly as possible once learning of appellants' violation. This is evidenced by the fact that appellee Jones, after becoming aware of the use of composition-type shingles on January 7, 1993, immediately contacted appellants that very evening to discuss their use of composition-type shingles, and his intent to enforce the amended covenants. In this discussion, appellant Frank Pilarcik would not agree to remove the composition-type shingles already installed, or to cease installation of the composition-type shingles, and indicated to appellee Kelly Jones that he knew litigation would result from his actions.

Appellants cite us to *Tejas Trail Property Owners Ass'n v. Holt,* 516 S.W.2d 441 (Tex. Civ.App.—Fort Worth 1974, no writ) as authority to support their argument that appellees are guilty of laches. In *Tejas Trail Property Owners Ass'n,* the suit to enforce the applicable restrictive covenants was not filed until one month *after* the roof installation was completed. *Id.* at 443–44. In the present case, suit was filed and appellants served *before completion* of installation of this replacement roof all within twenty-four hours after appellees had notice of appellants' use of nonconforming materials. As a matter of law, appellees' conduct does not rise to the level of an unreasonable delay to support laches. *Johnson,* 388 S.W.2d at 403; *Stergios,* 651 S.W.2d at 401.

Lastly, appellants' contention that appellees' enforcement of the restrictive covenants at issue is arbitrary, capricious, or discriminatory is without merit as a matter of law.

Section 202.004(a) of the Texas Property Code provides that the enforcement of a restrictive covenant "is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory." TEX. PROP. CODE ANN. § 202.004(a) (Vernon 1995). Appellants rely on *Gettysburg Homeowners Ass'n, Inc. v. Olson*, 768 S.W.2d 369 (Tex. App.—Houston [14th Dist.] 1989, no writ) for the foundation of their claim that appellees' enforcement of the amended covenants was arbitrary, capricious, or discriminatory.

The facts in *Gettysburg* are clearly distinguishable from the case at bar. In that case, the court found that the architectural control committee exercised its authority in an arbitrary or capricious manner. Specifically, the architectural control committee disapproved of certain developers' floor plans because they were perceived to replicate the same basic plans, whereas a witness later stated that the floor plan in a purportedly "custom" house could be identical to another home's floor plan. This provided the basis for the court to find that the authority given to the architectural control committee to approve the construction of new homes had been used in an arbitrary and capricious manner.

All the Waterwood Estates residents who suffered roof damage in the hail storm of 1992, all complied with the subject covenants, with the exception of appellants. It seems only reasonable to conclude that appellants were the only residents subjected to enforcement of the covenants because they were the only residents known to have violated them. Appellants provided no evidence to support their contention that appellees brought this suit against appellants in an arbitrary, capricious, or discriminatory manner.

For the reasons stated, appellants' first point of error is overruled.

### Appellees' Motion for Summary Judgment as to Appellants Counterclaim

■ Appellants counterclaimed that appellees themselves are in violation of the amended covenants. The summary judgment evidence shows that although several of the appellees have roofing materials other than wood shingles, *none of the appellees have composition-type roofing materials*. Two of the appellees' residences have tile roofs which was roofing material originally used when their residences were constructed in the early 1980's. Two of the appellees have aluminum roofing material, but none of the appellees have composition-type roofing materials. As no appellee has a roof constructed with the prohibited composition-type materials, there is no fact issue as to whether appellees are in breach of the relevant restrictive covenant.

■ Further, even if the appellees' homes complained of by appellants could be construed as violating the applicable restrictive covenant, it is clear that *the passing of time has made appellants' allegations moot.* The subject covenants provide:

[I]n any event if no suit to enjoin the construction has been commenced prior to the completion thereof, approval will not be required and the *restrictive covenants herein contained shall be deemed to have been fully complied with.* [Emphasis added.]

As indicated from the uncontradicted summary judgment evidence contained within the record, each of the items of construction complained of by appellants was completed years ago, and no suit to enjoin construction of any of the improvements was commenced prior to completion. Accordingly, any alleged requirement of approval by the ACC is waived, and "the restrictive covenants herein contained shall be deemed to have been fully complied with." Thus, as a matter of law appellees are not in violation of the applicable covenants.

■ In any event, appellants have waived the right to complain of alleged violations by appellees of the roofing covenants. By their own testimony, appellants moved into Waterwood Estates subdivision in February 1992. Despite appellees' alleged violations of the covenants being completed, open, and obvious, appellants let a period of *24 months* lapse before complaining of said violations, and only specifically complained about such violations seven days before the hearing of appellees' first motion for summary judg-

ment as to appellants' counterclaims. Even though appellees Preston Hasty and Doug Johnson admit that their nonwood, *noncomposition-type* roofs were installed in September and October of 1992, respectively, appellants still allowed at least *17 months* after these roofs were completed to elapse before to complaining of the violations.

It is clear as a matter of law that appellants waived their right to complain of appellees' alleged violations of the amended covenants.

In addition, appellants' motion for rehearing complains that our January 11, 1996 opinion fails to address several of appellant Pilarciks' claims. Specifically, in addition to the roofing restriction violation by appellees, appellants' counterclaim pleaded other violations by appellees: no temporary dwelling, shop or trailer shall be permitted on any lot; all fences shall be either of wood or masonry construction and shall not exceed six feet in height, and; restriction on the storage of boats on any lot.

Appellants argue that a fact question exists as to these remaining claims because each is unaddressed in our prior opinion. However, appellants have brought no point of error as to these remaining claims and accordingly appellants' motion for rehearing complaint is therefore waived.

For the reasons stated, appellants' second point of error is overruled.

*Appellants' Motion for Partial
Summary Judgment*

Appellants filed their motion for partial summary judgment seeking a declaration from the trial court that the installation of their composition-type roof did not violate the amended covenants.

Based on our discussion of appellants' first point of error, we concluded as a matter of law that 1) the covenants prohibit the use of composition-type roofing materials; 2) the ACC has no authority to waive the restrictions against composition-type roofing materials; and 3) in any event appellants failed to follow the covenants' required procedure to seek an ACC waiver of the prohibition against composition-type roofing materials.

For the same reasons, we conclude that the trial court was correct in denying appellants motion for partial summary judgment.

Appellants' third point of error is overruled. The judgment is affirmed.