**Frank and Deborah PILARCIK, Petitioners,**

v.

**James R. EMMONS and Susie Emmons, Preston and Fern Hasty, Doug Johnson, Jim Kern, Mike and Kathy Kobos, Kelly and Susan Jones, and Troy and Nell Radford, Respondents.**

No. 96–1092.

Supreme Court of Texas.

Argued on Feb. 25, 1997.

Decided April 14, 1998.

Rehearing Overruled June 5, 1998.

L. Kelly Jones, Bryan Thomas Cannon, Arlington, Matthew D. Goetz, Craig M. Price, G. Dennis Sheehan, Fort Worth, for Petitioners.

Anthony P. Jach, Arlington, for Respondents.

ABBOTT, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, HECHT, ENOCH, SPECTOR, OWEN, BAKER and HANKINSON, Justices, join.

A group of homeowners sued Frank and Deborah Pilarcik alleging that they violated neighborhood restrictive covenants by installing a composition-type shingle roof on their home. The trial court granted summary judgment requiring the Pilarciks to remove the composition shingles from their home, and the court of appeals affirmed. 938 S.W.2d 473. We conclude that the Architectural Control Committee created by the re-

strictive covenants had the authority to waive a covenant prohibiting composition roofs and did so for the Pilarciks. Accordingly, we reverse the court of appeals' judgment and render judgment for the Pilarciks.

I

Susie and James Emmons, Fern and Preston Hasty, Doug Johnson, Jim Kern, Kathy and Mike Kobos, Susan and Kelly Jones, Nell and Troy Radford (collectively the "Plaintiffs") and the Pilarciks own homes in Waterwood Estates in Arlington, Texas. The homes in Waterwood Estates are subject to various deed restrictions, including the following provisions in article I, paragraph 9 related to roofing:

> Roofs of composition type shingles will not be permitted. All roofs and dwellings or accessory buildings shall be constructed with wood shingles, unless an alternate roofing material is approved by the Architectural Control Committee.[1]

Article II of the restrictive covenants concerned "Architectural Control" and the Architectural Control Committee (ACC). Among other things, article II provided:

> 1. Architectural Control. No building shall be erected, placed, or altered on any lot until the construction plans, specifications and a plan showing the location of the structure shall have been approved by the Architectural Control Committee as to quality or workmanship and materials, harmony or exterior design with existing structures, and as to the location with respect to topography and finished grade elevation.... The Architectural Control Committee shall have the right to waive any Restrictions herein provided insofar as the same pertains to type of roof or quality of masonry to be used provided that the appraised value of the proposed house is not less than $50,000.00.

Article II, paragraph 2 listed the names and addresses of the Committee members and provided that "[i]n the event of death or

---

**1.** After the drafting of these deed restrictions, the Texas Property Code was amended in 1979 to void covenants requiring wood shingle roofs. TEX. PROP.CODE § 5.025 (previously codified at Tex.Rev.Civ. Stat. art. 1293c). No one argues that this amendment had any effect on the prohibition in article I, paragraph 9 against composition roofs.

resignation of any member of the Committee, the remaining members shall have full authority to designate a successor. . . ." The Committee was comprised of five members: Frank Richards, Al Latimer, Don Mackay, Robert D. Johnson, and James Payne.

Paragraph 2 then set forth procedures that homeowners like the Pilarciks had to follow to obtain a waiver from any of the deed restrictions:

> Procedure: Committee's approval or disapproval as required by this covenant shall be in writing. In the event the Committee or its designated representative fails to approve or disapprove within 30 days after plat, specifications and plot plan have been submitted to it or in any event if no suit to enjoin the construction has been commenced prior to the completion thereof, approval will not be required and the restrictive covenants herein contained shall be deemed to have been fully complied with.

In the spring of 1992, a severe hail storm damaged the roofs of several homes in Waterwood Estates. Many homeowners, including the Pilarciks, had to replace their roofs. The Pilarciks decided to install a composition roof after determining that their home would not structurally support other nonwood shingle alternatives, such as shale.

On September 3, 1992, the Pilarciks mailed written requests to all five members listed in the 1978 amended covenants, requesting the ACC to approve "Timberline or equivalent composition roof type material." Nothing in the record indicates that any of the ACC members ever received the Pilarciks' letter. On December 31, 1992, having received no response to their waiver request from the ACC within the 30 days specified in the amended covenants, the Pilarciks took delivery of roofing materials and began installing a Grand Manor "Shangle" Roof.[2]

On January 8, 1993, when the roof was 98% complete, the Plaintiffs sued the Pilarciks, petitioning for and receiving a temporary restraining order enjoining the Pilarciks from proceeding with their roofing. The Pilarciks sent a second set of letters to the ACC members on January 8, 1993. The letters were returned to the Pilarciks as "undeliverable." The Pilarciks then phoned Frank Richards, a designated ACC member. After reviewing the roofing materials used, as well as obtaining other information about the quality of the Grand Manor shingles and surveying the neighborhood, Richards gave his written approval for the Pilarciks' roof. ACC member Al Latimer also gave his written approval. All other designated ACC members had previously resigned their ACC memberships.

Both the Pilarciks and the Plaintiffs filed motions for summary judgment. The trial court denied the Pilarciks' motion, granted the Plaintiffs' summary judgment motion, and ordered that the Pilarciks remove the composition shingle roof. The trial court concluded that, under the last sentence of article II, paragraph 1, the ACC could only waive restrictions on a "proposed house," and the trial court interpreted "proposed house" to mean a house yet to be constructed. Because the Pilarciks' house had already been constructed, the court determined that the ACC did not have the authority to waive the prohibition on composition roofs. The court of appeals affirmed, concluding that the "specific" prohibition in article I, paragraph 9, against composition roofs controlled over the "general" language in article II allowing the ACC to waive roofing restrictions. 938 S.W.2d at 478–79.

### II

The Pilarciks maintain that the lower courts erred because the ACC has the authority to allow the use of composition-type shingles. They argue that the language of article II providing that "the [ACC] shall have the right to waive any Restrictions herein provided insofar as the same pertains to type of roof or quality of masonry" expresses an intent that the ACC would have the authority to waive *any* restriction pertaining to the roofs, exactly as the language

---

**2.** No one challenges that the Grand Manor shingle is of equal or higher quality than a Timberline shingle.

says. The Pilarciks urge that all doubts about the construction of the covenants must be resolved in favor of the free and unrestricted use of the premises and against the party seeking to enforce the covenants. *See Wilmoth v. Wilcox*, 734 S.W.2d 656, 657 (Tex. 1987); *Crispin v. Paragon Homes, Inc.*, 888 S.W.2d 78, 81 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

Moreover, the Pilarciks assert that they received ACC authorization to install a composition roof because the ACC did not respond "within 30 days" to the Pilarciks' September 3, 1992 letter in which they declared their intent to install Timberline shingles or an equivalent. Alternatively, the Pilarciks claim they subsequently received written ACC authorization from Frank Richards and Al Latimer in January 1993.

The Plaintiffs respond that the ACC did not have the authority to waive the composition shingle roof prohibition. Alternatively, the Plaintiffs argue that, assuming the ACC had such authority, the Pilarciks did not follow the procedures required to obtain a waiver of the prohibition.

Regarding the ACC's authority to allow composition shingles, the Plaintiffs first urge that the Pilarciks' interpretation of article II impermissibly renders meaningless the express prohibition against composition-type roofing materials found in article I, paragraph 9: "Roofs of composition type shingles will not be permitted." The Plaintiffs assert that article I, paragraph 9 is unambiguous. They argue that the correct interpretation is that the ACC may allow an alternative to wood roofing, so long as the alternative is not a composition-type material. Alternatively, because any authority given to the ACC in article II to waive roofing restrictions is restricted to a "proposed house," the Plaintiffs urge that the ACC may waive the composition shingle prohibition only in cases of new construction. Thus, the Plaintiffs conclude that any ACC roofing restriction waiver authority does not apply to the Pilarciks' replacement of an *existing* house roof. Finally, the Plaintiffs argue that Texas Property Code section 202.003(a)—requiring that covenants be liberally interpreted to effectuate the parties' intent—supplants *Wilmoth v.*

*Wilcox*, 734 S.W.2d 656 (Tex.1987) and its progeny. *See* TEX. PROP.CODE § 202.003(a)("A restrictive covenant shall be liberally construed to give effect to its purposes and intent.").

### ACC AUTHORITY TO WAIVE THE COMPOSITION SHINGLE RESTRICTION

 The restrictive covenants are subject to the general rules of contract construction. *See Scoville v. SpringPark Homeowner's Ass'n*, 784 S.W.2d 498, 502 (Tex. App.–Dallas 1990, writ denied). Whether restrictive covenants are ambiguous is a question of law. Courts must examine the covenants as a whole in light of the circumstances present when the parties entered the agreement. *See Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex.1997); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996). Like a contract, covenants are "unambiguous as a matter of law if [they] can be given a definite or certain legal meaning." *Grain Dealers*, 943 S.W.2d at 458; *accord Columbia Gas*, 940 S.W.2d at 589. On the other hand, if the covenants are susceptible to more than one reasonable interpretation, they are ambiguous. *Grain Dealers*, 943 S.W.2d at 458; *Columbia Gas*, 940 S.W.2d at 589.

 Article I, paragraph 9 expressly prohibits composition shingles: "Roofs of composition type shingles will not be permitted." But this provision does not stand alone: article I, paragraph 9 also provides, "All roofs and dwellings or accessory buildings shall be constructed with wood shingles, unless an alternate roofing material is approved by the [ACC]," and article II, paragraph 1 provides that the ACC "shall have the right to *waive any Restrictions herein provided insofar as the same pertains to type of roof* or quality of masonry to be used . . . ." (emphasis added). The covenants are clear and unambiguous in giving the ACC the authority to waive the restriction on composition roofs.

 The Plaintiffs argue that allowing the ACC authority to waive the composition roof restrictions in the restrictive covenants renders meaningless the restriction regarding

composition roofs. While it is true that a construction that nullifies a restrictive covenant provision should be avoided, *see Crispin v. Paragon Homes, Inc.*, 888 S.W.2d 78, 82 (Tex.App.—Houston [1st Dist.] 1994, writ denied), the Plaintiffs' contention is unfounded. Here, the ACC did not waive the composition shingle prohibition altogether; it waived the prohibition only with regard to the Pilarciks' alterations.

Indeed, one reason for rejecting the Plaintiffs' interpretation of the restrictive covenants is because their interpretation—not the Pilarciks—would nullify a provision in the covenants. Their interpretation would, for all practical purposes, nullify the provision giving the ACC "the right to waive any Restrictions herein provided insofar as the same pertains to type of roof."

■ In concluding that the ACC did not have the authority to waive the restrictive covenant provision regarding composition shingle roofs, the court of appeals reasoned that the "specific" language in the composition roof restriction should be given greater weight than the subsequent "general" language in the waiver provision. This rule of construction does not apply here. Both provisions are specific and do not conflict. article I, paragraph 9 states that composition roofs are prohibited; article II, paragraph 9 grants the ACC the power to waive this prohibition. Under the plain meaning of these provisions as a whole, the composition roof restriction continues in full force and effect until and unless the ACC decides to waive the restriction, and then, only to the extent the restriction is waived. This is the only construction that gives both provisions meaning and effect.

Finally, we consider Plaintiffs' argument that because the authority given to the ACC in article II, paragraph 1 to waive roofing restrictions is restricted to a "proposed house," the ACC may waive the composition shingle prohibition only in cases of new construction. Thus, as the argument goes, any ACC roofing restriction waiver authority would not apply to the Pilarciks' replacement of an *existing* house roof. We find this interpretation to be strained.

■ This interpretation ignores the collective language and intent of article II, paragraph 1. The first sentence begins: "No building shall be erected, placed, or *altered.* ..." The second sentence begins: "No fence or walls shall be erected, placed or *altered.* ..." These sentences are followed by the fourth sentence which gives the ACC the right to waive any restrictions regarding the "type of roof or quality of masonry...." Clearly, the paragraph is intended to govern alterations to houses, not just new house construction. Because proposed alterations must be submitted to the ACC for approval just as proposed new construction, the word "proposed" cannot be interpreted to mean only "new" construction.

■ Moreover, the empowerment clause relating to the ACC expressly allows the ACC the right to maintain its power throughout the life of the restrictive covenants. That is the very purpose of such committees. The argument that the powers of an architectural control committee to waive deed restrictions pertaining to roofs applies only to new homes misconstrues the covenants and improperly constrains the ACC's power.

### EFFECTIVENESS OF THE ACC'S WAIVER

The Plaintiffs contend that even if the ACC had the authority to waive the composition shingle roof prohibition, waiver would be inappropriate because the Pilarciks did not follow the procedures required to obtain a waiver. In September 1992, the Pilarciks first attempted to contact the Committee members at the addresses listed in the 1978 covenants. In December 1992, after receiving no response from the ACC, the Pilarciks assumed that further ACC approval was not required, and began installing the composition roof. The Pilarciks again attempted to contact the ACC in January 1993, after the other homeowners filed the injunction action. These January letters were returned undelivered. The Pilarciks then contacted ACC member Richards by phone, and later provided him a brochure describing the Grand Manor Shangle materials. Both Richards and Latimer sent the Pilarciks signed letters on January 12, 1993, waiving the restrictive covenant as to the Pilarciks. Accordingly,

we look to the ACC's actions in January 1993 to determine waiver.

With regard to the requirement that the ACC's approval or disapproval be in writing, both Latimer and Richards gave written approval to the Pilarciks' composition-type roof. It is immaterial that this approval was given after the construction had started because the covenants do not dictate a time beyond which the ACC's approval cannot be given; instead, the covenants dictate default consequences in the event the ACC does not act swiftly enough.[3] The covenants are silent with regard to the number of ACC members necessary to constitute a quorum and the number or percentage of ACC members required to waive a covenant. We conclude that the resignation of three ACC members conferred on the remaining two members the authority to waive the composition-type roof restriction. Because Richards and Latimer were the only remaining ACC members at the time of the waiver, the ACC's waiver was unanimous. Accordingly, we hold that Richards and Latimer properly approved the Pilarciks' installation of the composition roof.

Because the Pilarciks actually obtained the ACC's written waiver to use composition-type shingles, it is immaterial whether they complied with the prerequisites for obtaining approval under article II of the restrictive covenants. Those prerequisites establish certain standards by which the ACC can determine whether to approve or disapprove of construction in the neighborhood. Approval by the ACC presumes that it is satisfied with the proposed construction. Additionally, article II, paragraph 1 also provides that the "Architectural Control Committee shall have the right to waive *any Restrictions* herein provided insofar as the same pertains to type of roof ... provided that the appraised value of the proposed house is not less than $50,000.00" ACC approval of construction plans without requiring strict adherence to the submission of construction plans implies that the ACC has waived the requirement that those plans be submitted. That waiver is within the authority given to the ACC in the restrictive covenants, provided that the value of the house is not less than $50,000. There is no contention here that the Pilarciks' house is worth less than $50,000.

Moreover, when replacing roofing materials is the subject of the ACC's actions, it cannot be seriously contended that the homeowner must comply with all aspects of article II, paragraph 1. For instance, it would be ridiculous to require the Pilarciks to submit plans concerning their property's "topography and finished grade elevation" in order to obtain ACC approval to replace shingles on their roof. We find that the Pilarciks' submission of the brochure to ACC members Latimer and Richards was sufficient for the ACC to determine that the Grand Manor Shangle roof materials were appropriate for Waterwood Estates. Richards examined the brochure and contacted several roofing companies to confirm the quality of the Grand Manor Shangle composition material. He also viewed other homes in the Waterwood Estates subdivision to determine the compatibility between the Pilarciks' proposed composition roof and the other nonwood shingle roofs in the neighborhood. Thereafter, Richards and Latimer affirmed in writing the ACC's approval of the Pilarciks' composition roof. When giving that approval, the ACC had all the information it needed to make the decision.

\* \* \* \* \*

Because the Architectural Control Committee had the authority to waive the prohibition against composition shingles and the waiver provided by the ACC was effective, we reverse the judgment of the court of appeals and render judgment for the Pilarciks denying all relief to Plaintiffs.

---

3. Article II, paragraph 2 provides:
 In the event the Committee or its designated representative fails to approve or disapprove within 30 days after plat, specifications and plot plan have been submitted to it or in any event if no suit to enjoin the construction has been commenced prior to the completion thereof, approval will not be required and the restrictive covenants herein contained shall be deemed to have been fully complied with.

GONZALEZ, Justice, dissenting.

I believe it is inappropriate to resolve this dispute by summary judgment. In order to prevail, it is the Pilarciks' burden to show that there is no genuine issue of material fact. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). It is my view that they have failed to satisfy that burden because there is a fact issue as to whether the Architectural Control Committee ("ACC") has the authority to waive the restriction on composition shingles when those shingles are to be used to repair or replace the roof of an existing house. For this reason, I disagree with the Court's judgment and opinion. I would reverse the judgment of the court of appeals and remand the case for trial on the merits.

The homes in Waterwood Estates are subject to various deed restrictions, including the following provisions related to roofing:

> Article I. ¶ 9. Roofs of composition type shingles will not be permitted. All roofs and dwellings or accessory buildings shall be constructed with wood shingles, unless an alternate roofing material is approved by the Architectural Control Committee.
> Article II. ¶ 1. Architectural Control. No building shall be erected, placed, or altered on any lot until construction plans, specifications and a plan showing the location of the structure shall have been approved by the Architectural Control Committee as to quality or workmanship or materials, harmony or exterior design with existing structures, and as to the location with respect to topography and finished grade elevation.... The Architectural Control Committee shall have the right to waive any Restrictions herein provided insofar as the same pertains to type of roof or quality of masonry to be used provided that the appraised value of the proposed house is not less than $50,000.00.

Article I, paragraph 9 expressly prohibits composition shingles. But as the Court recognizes, the restrictions also provide that the ACC may "waive any Restrictions herein provided insofar as the same pertains to type of roof or quality of masonry to be used provided that the appraised value of the proposed house is not less than $50,000.00." I

agree that this express language allows the ACC to waive "any" restriction in the covenants, including the restriction on composition shingles. However, this language is in the context of, and thus limited by, the phrase, "provided that the appraised value of the proposed house is not less than $50,-000.00." If "the appraised value of the proposed house is not less than $50,000.00," the ACC has the authority to waive the restriction on composition shingles. The relevant inquiry then becomes whether this phrase, "the appraised value of the proposed house," limits ACC authority to only new construction, as urged by the Emmonses, or whether the language is mere surplusage, as the Pilarciks maintain.

In my view, the term "proposed house" is capable of several interpretations. For instance, the term could mean the house "proposed" to be built, which would limit the ACC's authority to waive the restrictions to new construction. But the term "proposed house" could also mean the house *proposed for repair,* which would be consistent with the Pilarciks' position. Moreover, "house" could mean any discrete *component part* thereof, including the roof, the foundation, and walls, such that the proposed replacement of any one of these components could fall within the term "proposed house."

The other language in Article II, paragraph 1 provides very little guidance to assist us in determining whether one of these interpretations of "proposed house" is the only reasonable interpretation. The first sentence provides, in relevant part:

> No building shall be erected, placed, or altered on any lot until construction plans, specifications and a plan showing the location of the structure shall have been approved by the Architectural Control Committee as to quality ..., harmony ... with existing structures ... and location with respect to topography and finished grade elevation.

As the Emmonses point out, most of this terminology is inconsistent with repairs or alterations to an existing house, especially the requirement that the ACC approve the "location [of the structure] with respect to

topography and finished grade elevation." Of course, if the house is just being repaired or portions replaced, a requirement that the ACC approve its "location" is meaningless. But on the other hand, the sentence does refer to a building being "altered," which might contemplate the repair or replacement of part of a house.

I disagree with the Court that, under these circumstances, the covenants can be given a definite or certain meaning as a matter of law. Instead, because the covenants are subject to at least two reasonable interpretations regarding the ACC's authority to waive the prohibition on composition shingles, I would hold that the covenants are ambiguous and a fact issue exists on the intent of the parties. Because the restrictions are ambiguous as to the scope of the ACC's authority to waive the prohibition, I would not reach the issue of whether the Pilarciks properly received a waiver.

Accordingly, I would reverse the judgment of the court of appeals and remand the case to the trial court to resolve the factual issue on the parties' intent and to determine, if necessary, whether the Pilarciks actually received a waiver from the ACC.