SONTERRA CAPITAL PARTNERS, LTD.; SV II Limited Partners, Ltd.; and Toscana at Sonterra, L.P., Appellants,

v.

SONTERRA PROPERTY OWNERS ASSOCIATION, INC., Appellee.

No. 04–05–00358–CV.

Court of Appeals of Texas, San Antonio.

Sept. 20, 2006.

418

Cynthia Hollingsworth, Gardere Wynne Sewell L.L.P., Dallas, Rosemary Bamberger Jackson, San Antonio, for appellants.

Keith P. Miller, Valinda J. Astoria, Miller & Astoria, L.L.P., Nissa M. Dunn, Crofts & Callaway, P.C., San Antonio, for appellee.

Sitting: SARAH B. DUNCAN, PHYLIS J. SPEEDLIN and REBECCA SIMMONS, Justices.

## OPINION

Opinion by SARAH B. DUNCAN, Justice.

The owner of a commercial building in the Sonterra subdivision of Stone Oak must pay its allocated share of the assessments necessary to maintain common areas and provide essential services. The primary issue in this appeal is whether, under the Sonterra Property Owners Association Declaration of Covenants, an apartment complex is a commercial building because its owner's primary purpose in owning it is to generate profits or a residence because its occupants use their individual apartments for residential purposes. We agree with the trial court that an apartment complex is a commercial building and therefore required to pay the assessments allocated to it as a commercial building. For this and other reasons discussed below, we affirm the trial court's judgment.

### Factual and Procedural Background

Sonterra Capital Partners, Ltd.; SV II Limited Partners, Ltd.; and Toscana at Sonterra, L.P. ("the Owners") own apartment complexes in a subdivision of Stone Oak known as Sonterra and filed this declaratory judgment action against Sonterra Property Owners Association ("the Association") to establish they are not required to pay assessments pursuant to the Sonterra Property Owners Association Declaration of Covenants. The Declaration provides in relevant part as follows:

### 6. VOTING

The [Association] shall have four classes of membership:

(a) Class A Members shall be the owners of lots on which single-family residences are to be or have been constructed.....

(b) Class B Members shall be the owners of all or a part of a lot or unit on which a townhouse-condominium dwelling is to be or has been constructed.....

(c) Class C Members shall be the owners of commercial properties which have become subject to this Declaration.....

(d) Class D Members shall be the owners of unplatted, developable acreage which is, or may be in the future, subjected to these Covenants.....

. . . .

### 8. ASSESSMENTS

(a) Obligation. Developer, for all property subjected hereto, and each owner of a lot, parcel or living unit located thereon, hereby covenant and agree to pay [the Association] such (i) annual assessments and (ii) capital assessments as are fixed and established herein. The assessments, together with interest and cost of collection, shall be the personal obligation of the record owner of a property at the time the assessments become due and shall also be a charge on the property constituting a lien thereon until paid.

(b) Purpose. The assessments shall be used exclusively to promote the recreation, health, safety and welfare of the property owners and, in particular, to improve and maintain common properties and facilities and to provide essential services including, without limitation, improving and maintaining community facilities, parks, parkways, esplanades, gates, walls and fences;

caring for vacant lots; providing needed security; providing such services as needed to maintain the subdivision as a first-class residential community; paying legal and other expenses incurred in connection with the collection, enforcement, and administration of assessments; and enforcing of all covenants and restrictions for the subdivision.

(c) Basic Annual Assessment. The total basic annual assessment for each year shall be set by the Board of Directors of [the Association], based on the estimated costs of performing such of the services set forth in subparagraph (b) above as the Board of Directors shall in its discretion determine to provide during the coming year to the property of all classes of members. The total estimated cost shall be allocated among the membership classes and to the property in each class as provided in (e) below. The amount thus estimated and allocated shall be the basic annual assessment.

. . . .

(e) Allocation of Assessment. Unplatted areas (except land not available for development) shall bear a charge equal to the Class A Assessment for an improved lot for each acre owned until such time as platting and/or improvement upgrades such land to Class A, B, or C Property. The time of conversion from Class D to another Class shall be the date a plat is recorded in the Bexar County Records. The time of upgrading from unimproved to improved property shall be the date of first sale of an improved residential property or the date of first occupancy of a commercial property.

The Declaration of Covenants goes on to detail the amount of the assessments to be allocated to each membership class and provides that "[a]n assessment is the personal obligation of the owner of the lot or unit at the time the assessment becomes due and payable and shall also become a continuing lien on the lot or unit. . . ."

After the Owners filed this declaratory judgment action seeking to establish they are not subject to the Declaration of Covenants, the Association filed an answer alleging they are and a counterclaim for the past due assessments, attorney's fees, and costs. Shortly thereafter, the Association moved for summary judgment on the ground that all properties located within Sonterra, including the Owners' properties, are subject to the assessments. The trial court granted this motion and later granted the Association's second motion for summary judgment on its counterclaim. The Owners appealed.

APPLICABLE LAW AND STANDARD OF REVIEW

"[R]estrictive covenants are subject to the general rules of contract construction." *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex.1998). Accordingly, "[w]hether restrictive covenants are ambiguous is a question of law." *Id.* We "examine the covenants as a whole in light of the circumstances present when the parties entered the agreement." *Id.* And, "[l]ike a contract, covenants are 'unambiguous as a matter of law if [they] can be given a definite or certain legal meaning.'" *Id.* "On the other hand, if the covenants are susceptible to more than one reasonable interpretation, they are ambiguous." *Id.* Restrictive covenants are liberally construed to effectuate their purposes and intent. *See* TEX. PROP.CODE ANN. § 202.003(a) (Vernon 1995).

"We review a summary judgment de novo." *Valores Corporativos, S.A. de C.V. v. McLane Co.*, 945 S.W.2d 160, 162 (Tex. App.-San Antonio 1997, writ denied). "Accordingly, we will uphold a summary judg-

ment only if the summary judgment record establishes that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law on a ground set forth in the motion." *Id.* (citing *Travis v. City of Mesquite,* 830 S.W.2d 94, 99–100 (Tex.1992); TEX.R. CIV. P. 166a(c)). "In deciding whether the summary judgment record establishes the absence of a genuine issue of material fact, we view as true all evidence favorable to the non-movant and indulge every reasonable inference, and resolve all doubts, in its favor." *Id.* (citing *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985)).

### "COMMERCIAL BUILDING"

■ The Owners argue the trial court erred in granting the Association's first motion for summary judgment because the Association failed to establish that the Owners' apartment complexes are commercial buildings for purposes of allocating assessments. We disagree.

Here, both the intent and purpose of the assessments are clear from the Declaration. Paragraph 8(a) of the Declaration requires "each owner of a lot, parcel or living unit located thereon ... to pay the [Association] such (i) annual assessments and (ii) capital assessments as are fixed and established." That intent is echoed in the Association's By–Laws, which provide that "every owner of a tract within the Property is obligated to pay to the Association its pro-rata share of expenses of maintaining the common areas of the Properties and operating the Association." It is thus clear that assessments were intended to be the obligation of every Sonterra property owner. Given this purpose—to allocate the burden of maintaining Sonterra as a whole for the benefit of all property owners within its boundaries—the Owners' construction of the Declaration is patently unreasonable. It would permit the Owners and their tenants to enjoy the benefits of the assessments without contributing to them and, as a result, force other Sonterra property owners to make up the difference. We therefore hold the Owners' properties are subject to the assessments. The only question is thus the membership class to which the Owners' properties belong.

The Association argues the Owners are Class C Members because their apartment complexes are plainly not single-family residences (Class A), townhouses or condominiums (Class B), or unplatted, developable acreage (Class D) and plainly are commercial properties (Class C). To support their argument to the contrary, the Owners argue the apartment complexes are not " 'commercial,' " which "is commonly defined, in relevant part, to mean 'of or relating to commerce.' " However, "commercial" has several definitions. Another definition of "commercial" is "viewed with regard to profit." MERRIAM-WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 264 (Merriam–Webster, Inc.1984). The Owners do not dispute that their primary aim in owning the apartment complexes is profit. But, they argue, their apartments cannot be considered "commercial" because they are used by their occupants as residences. However, in support of this argument, the Owners rely exclusively on authority holding that residential use restrictions do not prohibit the construction of apartments, condominiums, and duplexes. *See, e.g., Stephenson v. Perlitz,* 532 S.W.2d 954, 957 (Tex.1976). The Owners' reliance on this line of cases is misplaced. As the Owners recognize, in these cases, "the courts invariably focused on the properties' use, noting specifically that the restrictions were intended to require that the properties be used for living purposes as opposed [to] business or commercial purposes." We are not dealing here with

permitted uses but mandatory assessments. And holding that multi-family dwellings are residential for purposes of use restrictions does not mandate a holding that they are residential for all purposes. Indeed, in other contexts, multi-family dwellings have been considered commercial property. *See, e.g., City of Newton v. Board of Review for Jasper County*, 532 N.W.2d 771, 774 (Iowa 1995) (holding that residential retirement community was commercial property for tax purposes because, although organized as a cooperative, residents received no ownership interest in units); *Walker v. Gross*, 362 Mass. 703, 290 N.E.2d 543, 544 (1972) (holding that apartment complex did not violate residential use restriction but noting that "[i]n many respects and for certain purposes, ownership and operation of an apartment house is a business").

As the Association points out, the Declaration's provisions on voting and assessment classifications focus not on an occupant's use of property but on the classification of the property owned. Thus, Class A membership is restricted to the owners of single-family residences; Class B membership is restricted to the owners of townhouses and condominiums; and Class C membership encompasses the owners of commercial buildings. And it is clear the Owners use their apartment complexes not for habitation but for commercial purposes. Because the Declaration focuses on the classification of the property owned, we also disagree with the Owners' argument that if we hold that an apartment complex is a commercial building for purposes of the assessments, then any Class A or B Member who rents her single-family residence, townhouse, or condominium to another would likewise be considered a Class C Member and subject to the higher assessments allocated to the owners of commercial buildings. Since the Declarations classify members based upon their ownership of a particular type of property, rather than the use of the property, whether the owner of a single-family residence rents her property to another is irrelevant. Regardless of who occupies the property, she remains the owner of a single-family residence and thus a Class A Member.

Finally, the Owners argue that, because the Declarations do not expressly mention multi-family rental properties, Sonterra's developer must not have envisioned this type of multi-family property at the time Sonterra was developed; therefore, the Owners argue, it necessarily follows that Class C membership cannot be construed to encompass multi-family properties. But this argument is circular. It depends solely upon the definition of "commercial building." If "commercial building" as used in the Declaration includes a multi-family rental property, that type of property was envisioned.

We are unpersuaded by the Owners' arguments and hold the trial court correctly ruled that all Sonterra property owners—including the owners of apartment complexes—are subject to the assessments. Accordingly, the trial court properly granted the Association's first motion for summary judgment.

### FRAUD

■ The Owners next argue the trial court's summary judgment on the Owners' fraud claim was precluded by fact issues. However, the only misrepresentation of which the Owners complain—that they would be responsible for the assessments—was true, as demonstrated by the foregoing discussion, and thus cannot form the basis of a fraud claim. *See, e.g., Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 211 n. 45 (Tex.2002) (essential

elements of fraud claim include representation that is false).

■ The Owners also complain that the Association's motion for summary judgment on their fraud claim was "substantively insufficient," "conclusory," and "fails to state the specific grounds upon which the relief is being sought." We disagree. The Association's motion states: "Because [the Owners] are, as a matter of law, required to pay to [the Association] assessments as set forth in the Declaration and other applicable documents, [the Owners'] claim for fraud must, as a matter of law, also fail." This statement unequivocally identifies the fatal flaw in the Owners' fraud claim: it rested on an alleged misrepresentation—they were required to pay assessments—that was in fact a true statement. No more is required. *See, e.g., Little v. Tex. Dep't of Justice,* 148 S.W.3d 374, 381 (Tex.2004) (holding that defendant who conclusively negates at least one essential element of plaintiff's cause of action entitled to summary judgment).

### AMOUNT OF ASSESSMENTS AND ATTORNEY'S FEES

Finally, the Owners argue the trial court erred in granting the Association's second motion for summary judgment because its proof of the amount of the past due assessments is conclusory and its proof of the Association's attorney's fees includes duplicative amounts. We again disagree.

■ In support of its motion for summary judgment to collect the past due assessments, the Association submitted the affidavit of Scot Wilson, the Administrator for the Association's management company, Hill Country Management Service. In his affidavit, Wilson states that one of his duties is to "track[ ] assessments owed by various commercial entities within the Sonterra and Stone Oak subdivisions"; and, in the course of his duties, he calculated the amounts due and owing by each of the Owners "after all just and lawful offsets, credits and payments have been allowed." As support, Wilson attached Exhibit SW–1, which he authenticates as one of the Association's business records and which is a "payment history reflecting amounts owed by each of [the Owners]." Exhibit SW–1 consists of three schedules, one for each of the Owners, each entitled "Financial Transactions," and each containing columns for "date," "payments," "charges," "amount", and "balance due." The Owners argue this evidence is insufficient to establish either the property class used to allocate assessments or whether they are special or annual assessments. However, Wilson specifically states in his affidavit that he calculated the amounts due and owing in the course of his duties to "track[ ] assessments owed by various *commercial* entities within the Sonterra and Stone Oak subdivisions"; and the schedules list the nature of the charges, whether "assessment," "late fees," "legal fees," "mowing," etc. We therefore hold Wilson's affidavit is sufficient to support the trial court's summary judgment on the amount of past due assessments. *See FFP Mktg. Co. v. Long Lane Master Trust IV,* 169 S.W.3d 402, 411 (Tex.App.-Fort Worth 2005, no pet.) (holding that affidavit setting forth total balance due on note is generally sufficient to sustain summary judgment and detailed proof of balance not required); *Hudspeth v. Investor Collection Serv. Ltd. P'ship,* 985 S.W.2d 477, 479 (Tex.App.-San Antonio 1998, no pet.) (holding that bank employee's affidavit setting forth total balance due sufficient to support summary judgment).

The Owners also argue the Association's proof of attorney's fees contains duplicative amounts because Wilson's affidavit includes entries for "Atty/Legal Fees," while the affidavit of Keith P. Miller reflects

amounts due for attorney's fees in this suit. We again disagree. As the Association argues, the Declaration permits attorney's fees in connection with assessments in two situations. Paragraph 8(b) of the Declaration provides that all owners must pay assessments for the attorney's fees necessitated by collecting the assessments. These are the "Atty/Legal Fees" reflected in Wilson's affidavit. Paragraph 8(i), on the other hand, provides for the collection of attorney's fees when the Association refers a specific unpaid assessment to an attorney for collection, such as occurred in this suit. These are the attorney's fees reflected in Miller's affidavit.

Finally, the Owners argue the trial court erred in awarding the Association all of the fees it sought because the Association failed to segregate the fees it sought to collect on behalf of the Stone Oak Property owners. However, a recognized exception to the duty to segregate exists when claims arise "out of the same transaction and are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.'" *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex.1991) (quoting *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex.App.-Dallas 1987, writ denied)); *Doncaster v. Hernaiz*, 161 S.W.3d 594, 607 (Tex.App.-San Antonio 2005, no pet.). That is the case here. Accordingly, the Association was not under a duty to segregate.

The trial court's judgment is affirmed.