

# MEMORANDUM OPINION

No. 04-08-00317-CV

**ALSATIAN HEIGHTS HOMEOWNERS ASSOCIATION**,
Appellant

v.

Omar **RODRIGUEZ**,
Appellee

From the 38th Judicial District Court, Medina County, Texas
Trial Court No. 07-11-18713-CV
Honorable Mickey R. Pennington, Judge Presiding

Opinion by:   Rebecca Simmons, Justice

Sitting:      Sandee Bryan Marion, Justice
              Rebecca Simmons, Justice
              Steven C. Hilbig, Justice

Delivered and Filed:   February 4, 2009

REVERSED AND REMANDED

Alsatian Heights Homeowners Association appeals a summary judgment granted in favor of Omar Rodriguez declaring that Rodriguez's home is not in violation of the Declaration of Restrictive Covenants, Conditions, and Restrictions for the Alsatian Heights Subdivision (the "Declaration"). The Association contends that the trial court erred in granting summary judgment in favor of Rodriguez and by including findings of fact and conclusions of law in its order.  We reverse the judgment of the trial court and remand the cause for further proceedings.

**BACKGROUND**

In September of 2006, Rodriguez purchased property from his brother-in-law. Rodriguez's brother-in-law had started construction of a residence prior to Rodriguez's purchase of the property. At the time of the purchase, Rodriguez's brother-in-law did not inform Rodriguez that the Association had contacted him regarding the construction. Although Rodriguez received a copy of the Declaration at the time he purchased the property, he did not read it.

On October 23, 2006, the Association sent Rodriguez a letter informing him that the Association had previously contacted his brother-in-law requesting a site plan and a time line for the completion of the residence. The letter refers to paragraphs 5.01 and 5.04 of the Declaration. Paragraph 5.01 states:

> 5.01   Approval of Plans and Specifications: No building, home, manufactured home, modular home, manufactured house, fence, wall, or other structure shall be commenced, placed, erected, or maintained upon the Properties, nor shall any exterior addition to, or change or alteration therein, be made, nor shall any landscaping, excavating or filling in of any Lot or Lots be undertaken, until the full set of plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to and approved in writing by the Committee.

Paragraph 5.04 provides in pertinent part:

> 5.04   Conventional Construction Homes: Homes of Conventional Construction shall be built on site using new materials. ...  A minimum double carport and enclosed storage shed shall be required for each residence. ... No flat roofs shall be permitted.

The Association's letter requested that Rodriguez complete and return: (1) pages 1-3 of a Site Plan Approval Required Data/Information Check-Off Sheet (the "Approval Request Form"); and (2) a Request for Waiver form stating the anticipated completion date. The letter concluded, "Please send me the site plan and Request for Waiver information within the next 30 days."

On March 1, 2007, Rodriguez's wife, Veronica Prida, responded to the Association's letter enclosing the completed Approval Request Form and Request for Waiver. Prida informed the Association that the delay in responding was due to her being diagnosed with cancer.

In the Request for Waiver, Rodriguez and Prida requested a waiver of four months to come into compliance with the Declaration. The Approval Request Form stated, "Final Approval requires the following information. Conditional Approval may be obtained." In completing the Approval Request Form, Rodriguez and Prida checked that a "dimensioned site plan drawing" was being submitted showing four of five listed items, including: (1) the location of the house; (2) the location of the septic system; (3) the location of the driveway; and (4) the location of the fencing. Rather than checking that the drawing showed the fifth item, the location of planned outbuildings, Rodriguez and Prida wrote "N/A." Similarly, beside the portion of the Approval Request Form requesting a description of the outbuildings, Rodriguez and Prida wrote "N/A." Finally, Rodriguez and Prida completed the Approval Request Form by describing the fence to be installed as a six foot fence to be located in front of the property with installation anticipated to begin on March 15, 2007, and end on March 30, 2007. Attached to the Approval Request Form was a quotation for the septic system that described the system and contained an engineer's drawing of the septic system layout.

On March 12, 2007, Sandra Crenshaw, the president of the Association, e-mailed Prida and stated, "I am granting a conditional approval of your submitted site plan." Crenshaw informed Prida that a six foot fence could not be erected in front of the home. Crenshaw further informed Prida that only one month was being granted to complete the exterior of the house and the driveway.

The Association's written Conditional Site Plan Approval stated that the "location and size of the home are accepted and approved" and a waiver of the 50 ft. setback was granted "because the

house is permanently attached." The request for a four month waiver was denied but a waiver of thirty days from the date the conditional approval was received was granted "for the completion of the exterior of the home and the driveway." The approval of the six foot fence was denied, and information was provided regarding the type of fence that would be acceptable. The letter concluded: "We need the following information: 1) The location of the driveway with respect to the septic system. The driveway has not been drawn on the site plan. 2) Description of the fencing planned for the front of the house, if you are still planning to erect a fence in the front."

On March 30, 2007, the Association sent Rodriguez another letter informing him that flat roofs were prohibited and that he must change the roof line to accommodate a slope before a final approval would be given. The letter stated that the Architectural Control Committee ("Committee") and the Board of Directors ("Board") expected a sloped roof to be completed by April 16, 2007. On May 15, 2007, Prida sent Crenshaw a letter stating, "As agreed at our meeting, I have checked into the possibility of altering the appearance of the roof line at the house we are building at lot 129." Prida's letter stated that the house was 98% complete and adding a new roof structure would present two major problems. In an effort to please the Board, Prida's letter proposed to install a canopy on the house facade facing the street and enclosed a drawing of the proposed canopy.

On June 2, 2007, the Association sent a letter rejecting the proposal. The letter suggested two modifications to the roof that would be acceptable to the Board. On June 20, 2007, Prida responded by requesting various items of information and a hearing before the Committee. On July 11, 2007, Prida and Rodriguez sent Crenshaw a follow-up letter inquiring about the status of the information they had previously requested and informing Crenshaw that they intended to attend a hearing on July 26, 2007, regarding the concern about the roof. On July 19, 2007, a letter was sent

to Prida on behalf of the Board providing some of the requested information, stating that the Board was not required to give certain other information, and noting that the hearing regarding the roof was scheduled for July 26, 2007.

On August 20, 2007, Rodriguez sent Crenshaw a letter requesting a resale certification and noting that no formal written response had been received regarding the Board's decision at the hearing. On September 10, 2007, the Association sent Rodriguez and Prida notice that the property was in noncompliance with the Declaration because the grass and brush were not being maintained in a neat and orderly manner. On September 21, 2007, the Association sent Rodriguez and Prida notice that the property was in noncompliance with the Declaration because a minimum double carport and enclosed storage shed were required for each residence. The letter stated that the Committee's approval of the structures must be obtained in advance. On October 26, 2007, a second notice regarding the carport and storage shed was sent stating Rodriguez and Prida had fourteen days to comply or the Board could hire outside contractors to correct the noncompliance and charge the costs to the property owner. On November 19, 2007, a third notice of noncompliance was sent also threatening to hire outside contractors to correct the deficiencies.

On November 18, 2007, Rodriguez filed the underlying lawsuit seeking declaratory relief that he was in compliance with the Declaration based on the Association's conditional approval. Rodriguez also asserted the defenses of laches, estoppel, and waiver to the enforcement of the Declaration. Rodriguez subsequently filed a motion for summary judgment. The only ground asserted in the motion as a basis for summary judgment was Rodriguez's contention that he was in compliance with the Declaration based on the Association's approval. Attached to the motion was Rodriguez's affidavit in which he stated that the roof was complete when the Approval Request

Form was sent to the Association. Rodriguez also stated that no information was provided regarding the roof because the Approval Request Form did not ask for that information. Finally, Rodriguez stated that the roof is not flat but has a slope.

The Association responded to Rodriguez's motion and attached the transcripts of Rodriguez and Prida's depositions. Pictures of the roof are attached to Prida's deposition.

After a hearing, the trial court granted summary judgment in favor of Rodriguez. The Association appeals the trial court's order.

## STANDARD OF REVIEW

We review a summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). We consider the evidence in the light most favorable to the non-movant and indulge all reasonable inferences and resolve any doubts in the non-movant's favor. *Id*. at 157. We will affirm a summary judgment only if the movant established there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law on a ground expressly set forth in the motion. *Id*.

## DISCUSSION

Because the only ground asserted by Rodriguez in his motion for summary judgment was that the residence was in compliance with the Declaration based on the Association's conditional approval, we do not consider the defenses of waiver, estoppel, or laches asserted in Rodriguez's petition but not raised in his motion. *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 675-77 (Tex. 1979) (holding grounds for summary judgment must be expressly set out in motion). Restrictive covenants are subject to the general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998); *Sonterra Capital Partners, Ltd. v. Sonterra*

*Property Owners Ass'n, Inc.*, 216 S.W.3d 417, 420 (Tex. App.—San Antonio 2006, pet. denied). Restrictive covenants are liberally construed to effectuate their purposes and intent; however any doubts are resolved in favor of the free and unrestricted use of the premises. *Sonterra Capital Partners, Ltd.*, 216 S.W.3d at 420.

Section 5.01 of the Declaration required Rodriguez to submit a "full set of plans and specifications showing the nature, kind, shape, height, materials, and location" of the residence prior to beginning construction in order to seek the Association's approval. Rodriguez relies heavily on *Pilarcik v. Emmons*, 966 S.W.2d at 480, in asserting that his failure to submit his plans prior to construction was immaterial in view of the Association's conditional approval. Unlike the instant case, however, the restrictions at issue in *Pilarcik* expressly gave the architectural control committee in that case the authority to waive the restrictions in question. *Id.* at 476, 480. In reaching its holding that the architectural control committee waived the covenant prohibiting composition roofs, the Texas Supreme Court concluded:

> [The architectural control committee's] approval of construction plans without requiring strict adherence to the submission of construction plans implies that the [architectural control committee] has waived the requirement that those plans be submitted. That waiver is within the authority given to the [architectural control committee] in the restrictive covenants, provided that the value of the house is not less than $50,0000.

*Id.*

As previously noted, the Approval Request Form required the submission of a "dimensioned site plan drawing." At most, the engineer's drawing of the septic system attached to the Approval Request Form raises a fact issue as to whether Rodriguez complied with this requirement. The engineer's drawing cannot establish as a matter of law that Rodriguez submitted the "full set of plans

and specifications" that were required by the Declaration as a prerequisite to the Association's approval.

In addition, the Conditional Site Plan Approval stated only that the "location and size" of the home were accepted and approved. The location and size of the home were provided to the Association by Rodriguez because the Approval Request Form stated that the dimension of the house would be 51 feet wide and 54 feet long and contain 2000 square feet and the engineer's drawing diagramed the location of the house. We cannot, however, conclude that the Association's conditional approval stating that the location and size of the home were approved conclusively established, as a matter of law, that all of the details of the construction were approved by the Association given that: (1) the Approval Request Form noted a distinction between final approval and conditional approval; (2) the Association sent notice of the roof's noncompliance within thirty days after the Approval Request From was submitted; and (3) a fact issue exists with regard to whether Rodriguez submitted a "dimensioned site plan drawing" or a "full set of plans and specifications." *Cf. Hardee v. Westminster Glen Phase I Homeowner's Ass'n, Inc.*, No. 03-00-00445-CV, 2001 WL 223383, at *4 (Tex. App.—Austin Mar. 8, 2001, no pet.) (finding homeowner failed to submit development plan required for approval by architectural control committee). Accordingly, we conclude that the trial court erred in granting summary judgment in favor of Rodriguez.[1]

---

[1] Because we reverse on the Association's first issue, we do not address the Association's second issue regarding the trial court's inclusion of findings of fact and conclusions of law in its order.

**CONCLUSION**

Because Rodriguez only moved for summary judgment on the basis that the Association had approved the construction of the residence and the record raises genuine issues of material fact regarding the effect of the Association's conditional approval, we reverse the trial court's summary judgment and remand the cause to the trial court for further proceedings.


Rebecca Simmons, Justice