# N. C. STEWART V. N. J. WELSH, JR.

No. 8172.  Decided February 2, 1944.
Rehearing overruled March 8, 1944.
(178 S. W., 2d Series, 506.)

*Wesley Seale* and *Jas. B. Hubbard*, of Corpus Christi, for petitioner.

The Court of Civil Appeals erred in holding that plaintiff had waived his right to insist upon compliance with the restriction in question by permitting a similar violation upon adjoining property to go unabated and unobjected to for more than four years prior to the violation by defendant in this instance. Dellaughter v. Hargrove, 40 S. W. (2d) 253; Clifton George Co. v. Great Southern Life Ins. Co., 234 S. W. 705.

*William H. Shireman*, of Corpus Christi, for respondent.

MR. JUDGE SMEDLEY, of the Commission of Appeals, delivered the opinion for the Court.

Petitioner N. C. Stewart, the owner of two lots in Del Mar addition to the City of Corpus Christi on which he resided, sued respondent, who owned and resided on an adjoining lot and part of another lot, to compel the removal by mandatory injunction of a fence that respondent had built on the line between his property and the property of petitioner. The Court of Civil Appeals reversed the trial court's judgment, which was for petitioner, and rendered judgment that he take nothing by his suit, holding in its opinion, 178 S. W. (2d) 581, that petitioner waived his right to enforce a restrictive covenant against respondent by acquiescing in a similar violation by another on adjoining property.

On December 2, 1925, A. L. Wright, as trustee for the owner, by written instrument duly executed and recorded, created a general plan for the development and improvement of Del Mar addition to the City of Corpus Christi as a restricted residence district, imposing elaborate limitations and restrictions upon the property in the district, to extend to all persons acquiring lots or parts of lots, and to their heirs, assignees, devisees and lessees. The instrument, designated a declaration of limitations, provides that reference shall be made to it in all contracts and deeds affecting property in the addition and that all purchasers or subsequent owners shall be charged with due notice of the fu'l contents of the same. It further provides that any party violating any limitation, condition or restriction shall become subject to legal injunction by A. L. Wright, trustee, or by the owner of any lot in the addition.

We quote two paragraphs from the instrument:

"(27) A franchise right of Five (5) feet along both sides of the central dividing line running through each block in Del Mar as shown by the map thereof, along the rear of all lots, is expressly reserved by A. L. Wright, Trustee, for the use and benefit of public utilities and utility companies, the right of ingress and egress to lay, change, remove and repair utilities in said ten foot reserve being expressly provided for.

"(28) No house or structure of any kind shall be built on the said reservation running through said blocks."

Del Mar is a large addition consisting of forty-five blocks, a number of which contain as many as thirty lots. Block 9, in which petitioner's and respondent's properties are situated, is divided into eight lots, each 57.38 by 135 feet in dimensions. Lots 1 and 2, owned by petitioner, face south, lot 1 being on the corner, and lots 6 and 7 face north. Respondent owns all of lot 7 and the east 34.88 feet of lot 6. The south line of lot 7 coincides with the north line of lot 2 and the south line of lot 6 with the north line of lot 3. There are no alleys in the blocks, but the area ten feet in width through the middle of each block, or five feet along both sides of the central dividing line running through each block, affected by the franchise right or easement, is indicated on the plat by dotted lines.

Petitioner acquired his lots through deed dated February 28, 1936, which expressly stated that the conveyance was subject to the conditions, limitations and restrictions set forth in the declaration of limitations by A. L. Wright, identifying that instrument by reference to the book and page where it was recorded. Respondent's lot and part of an adjoining lot were conveyed to him by deed dated June 20, 1939, containing a like reference to the instrument executed by Wright.

In March, 1941, respondent Welsh began the construction of a fence along the line dividing his lot 7 from petitioner's lot 2, and being along the center of the area subject to the franchise right or easement. He completed the fence in June or July of the same year. The fence is made of posts set in the ground, rails or runners and pickets, and is seven feet in height. It connects with like fences along the sides of respondent's property, thus placing within his enclosure all of the five foot area reserved across the rear of his lots. While the fence was being built petitioner objected to its construction in that location. The posts had then been set and the top railing nailed on them. After the fence was completed petitioner wrote respondent a letter ask-

ing for a conference for the purpose of procuring an agreement to put the fence in a proper place. The fence was completed where it was begun and has not been moved.

The reserved area along the rear of the lots in block 9 has been used for the installation and maintenance of water, sewer, gas, electric and telephone lines to serve the property owners. The exact location of the water, gas and sewer lines is not shown, but there is testimony that they are very nearly along the center of the area. The telephone poles are along the south part of the area outside of respondent's fence. The poles for light and power lines are on the north part of the area and within the enclosure made by respondent's fence.

In our opinion the trial court correctly concluded that the fence built by respondent is a "structure" within the meaning of the restriction imposed by the declaration of limitations. By paragraph 27 a franchise right or easement is created in the strip of land ten feet in width along the rear of the lots for the use of public utilities and utility companies, with the right of ingress and egress, and paragraph 28 provides that "no house or structure of any kind shall be built on said reservation running through said blocks."

The word "structure" is often used in a broad sense, often in a restricted sense. The broad definition is that quoted in Favro v. State, 39 Texas Cr. Rep. 452, 46 S. W. 932, 73 Am. St. Rep., 950: "Any production or piece of work artifically built up, or composed of parts joined together in some definite manner; any construction." In a restricted sense "structure" means: "A building of any kind, chiefly a building of some size or of magnificence; an edifice." 60 C. J. 666.

■ An ordinary fence is a structure within the broad definition, but is not a structure as narrowly last defined. Many definitions of this word appear in Words & Phrases and in Corpus Juris. 40 Words & Phrases (Perm. Ed.) pp. 323-333, 60 C. J. pp. 655-667. An examination of the texts shows that the inclusion of the particular object within the term, or its exclusion therefrom, usually depends upon the context and the purpose sought to be accomplished by the provision of which the term is a part. American Jurisprudence contains the statement that "Whether fences are buildings within the meaning of restrictions affecting buildings depends upon the form and purpose of the restriction." 14 Am. Jur., p. 626, Sec. 230.

The prohibition in the declaration of limitations is against the building of a house *or structure of any kind,* suggesting a broad rather than a restricted application of the term. The purpose of the prohibition appearing in paragraph 28 in to make useful and effective the reservation made in paragraph 27. The restriction is intended to prevent the construction on the reserved area of any house, building or other substantial structure of any kind, because any such house, building or other structure would probably interfere with the free use of the area for the installation and maintenance of water, gas, sewer, light, power and telephone lines. The fence built by respondent is substantial and permanent, seven feet high and constructed of posts set in the ground, rails and pickets. It is along or very nearly along the water, gas and sewer lines and it encloses the light and power poles and lines within respondent's yard. It is not merely a trivial annoyance, but is a material obstacle to the use of the reserved area for its intended purpose.

■ In our opinion, petitioner has not waived his right to restrain respondent's breach by failing to object to a violation of the restriction by Mrs. Tullos, the owner of lot 3 lying immediately west of petitioner's property. While a lot owner in a restricted district may under certain circumstances, by acquiescence in violations of restrictions as to some lots, waive his right to insist upon compliance as to others, the settled rule is that he is not precluded from enforcing a restriction against an owner whose violation of it materially affects him, by failing to complain of another's violation which does not materially affect him in the enjoyment of his property or which is merely trivial.

The opinion of the Court of Civil Appeals in Green v. Gerner, 283 S. W. 615 (affirmed, Com. App., 289 S. W. 999) in discussing this question quotes as follows from Corpus Juris: "But where violations have not been permitted to such an extent as to evidence an abandonment of the plan, a grantee will not be prevented from objecting to further violations by the fact that he has not objected to previous violations by others, particularly where such violations do not immediately affect the enjoyment of his own premises or where they were trivial in character as compared with those complained of." 18 C. J. p. 403, Sec. 469. See also 26 C. J. S. pp. 565-566, Sec. 169.

In Spencer v. Maverick, 146 S. W. (2d) 819, 824, Chief Justice Smith of the Court of Civil Appeals for the Fourth District, quoted with approval like statements of the rule from Ward v.

Prospect Manor Corp., 188 Wis. 534, 206 N. W. 856, and from other authorities. Annotations in 46 A. L. R., pp. 372-380 and 85 A. L. R., pp. 936-939, reviewing many cases, show that this is the well settled general rule. See also Deitrick v. Leadbetter, 175 Va. 170, 8 S. E. (2d) 276, 127 A. L. R. 849; 14 Am. Jur., pp. 644-645, Secs. 295-296.

The authorities cited by respondent are cases in which waiver was claimed because of a violation to which the person complaining was a party, or because of a permitted violation that materially affected or injured him, and cases in which there were other violations so extensive as to indicate an intention on the part of the property owners to abandon the general scheme or purpose.

The evidence as to the Tullos fence, consisting of two or three photographs and the testimony of respondent and of petitioner, fails to show clearly the length of that fence or the manner of its construction. It is shown that Tullos owned lot 3 in block 9 and built his home on it in the year 1936. Lot 3 faces south and lies immediately west of petitioner's lot 2 and immediately south of lot 6, the east 34.88 feet of which is owned by respondent. The trial court found that Mrs. Tullos, prior to the erection of petitioner's house, built a fence in violation of the restrictions along the center of the 10 feet area affected by the franchise right or easement, and that petitioner, for a period of more than four years prior to the time when respondent built his fence, made no effort to require the removal of the Tullos fence. The evidence indicates that the Tullos fence was built near or along the division line between lot 3 and lot 6. It is not clearly shown that the fence extended as far west as the northwest corner of lot 3 or as far east as the northeast corner of that lot, which is the northwest corner of petitioner's lot 2. It appears from the evidence that the Tullos garage, which is not on the reserved area, is near the northeast corner of lot 3 and that the Tullos fence does not extend to that corner and thus does not even touch petitioner's property. Be that as it may, the Tullos fence was not built along any line of petitioner's property and is not in any part of the reserved area to the rear of petitioner's lots. It is on the division line between respondent's property and that of Mrs. Tullos. Before respondent's fence was built the reserved 10 foot area behind petitioner's property was, notwithstanding the Tullos fence, unobstructed and open to ingress and egress. The Tullos fence did not immediately affect petitioner in the enjoyment of his property and, while it was

a violation of the restriction, it was, in relation to petitioner's property, trivial in character.

■ In further defense of the suit respondent alleged that the restriction relied upon by petitioner had been abandoned by the property owners within the subdivision. The trial court found that the declaration of limitations had been violated in certain other instances by different persons, but concluded that these violations were not sufficient to show an abandonment of the limitations by the property owners in Del Mar Addition. Respondent and other witness testified, and photographs offered in evidence showed, that in five or six other places in the addition fences had been built on the restricted 10 foot area to the rear of the lots. Respondent testified that the particular violations to which he testified were "very representative and an extremely small portion of it." The other witness testified that he had seen hedges and fences on the restricted area in other portions of Del Mar Addition, that he had observed the fences by driving through the addition, and that in his opinion he "would say that generally throughout they had disregarded the easement." This evidence does not conclusively prove that violations had been permitted throughout the large addition to such an extent as to evidence an intention on the part of the property owners to abandon the plan. At most it raises an issue of fact which was concluded in the trial court.

The judgment of the Court of Civil Appeals is reversed and the judgment of the district court is affirmed.

Opinion adopted by the Supreme Court Feb. 2, 1944.

Rehearing overruled March 8, 1944.