



# MEMORANDUM OPINION

No. 04-10-00195-CV

**STAGE RUN OWNERS ASSOCIATION**, Inc.,
Appellant

v.

Davinder Singh **BAINS** and Parmjit K. Bains,
Appellees/Cross-Appellants

v.

**KB HOME LONE STAR**, L.P.,
Cross-Appellee

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-05745
Honorable David A. Berchelmann, Jr.,[1] Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Karen Angelini, Justice
Phylis J. Speedlin, Justice
Rebecca Simmons, Justice

Delivered and Filed:  November 24, 2010

REVERSED AND REMANDED

---

[1] The Honorable David A. Berchelmann, Jr., presiding judge of the 37th Judicial District Court, Bexar County, Texas, signed the final judgment; however, the Honorable Antonia Arteaga, presiding judge of the 57th Judicial District Court, Bexar County, Texas, conducted the hearing on Bains's motion for partial summary judgment and granted that motion in Bains's favor.

Stage Run Owners Association, Inc. ("the Association") challenges the summary judgment granted in favor of Davinder Singh Bains ("Bains") and Parmjit K. Bains. We reverse the judgment of the trial court, and remand the case for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2004, Bains purchased a new home from KB Home Lone Star, L.P. ("KB Home") located in the Stage Run subdivision. The subdivision is maintained and governed by the Association, which was organized pursuant to the Declaration of Covenants, Conditions and Restrictions for Stage Run ("the Declaration"). The Declaration requires submission of plans to the Architectural Control Committee (ACC) for approval before certain improvements can be made on home lots. Shortly after closing on the home, Bains had concrete pads installed in the side yards and back yard of the property. Bains subsequently sought approval for the pads from the Association. The ACC denied approval and demanded that Bains remove the concrete pads. Three years later, the Association filed suit against Bains for the alleged breach of Article V of the Declaration, which provides in pertinent part as follows:

> No building, fence, wall, parking area, swimming pool, spa, pole, mail box, driveway, fountain, pond, tennis court, sign, exterior color or shape, or new or modification of a structure shall be commenced, erected or maintained upon any Lot or the patio or garage used in connection with any Lot after the purchase of any Lot from [KB Home], nor shall any exterior addition to or change or alteration therein be made until the plans and specifications showing the nature, kind, shape, height, materials and location of the same are submitted to and approved by the Committee.

The Association sought an injunction requiring Bains to remove the concrete ground cover, as well as an award of statutory damages and attorney's fees under the Declaration, the Property Code, and the Texas Declaratory Judgment Act. *See* TEX. PROP. CODE ANN. § 5.006 (West 2004); TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008).

Bains answered and filed a third-party petition against KB Home on the grounds that KB Home arranged and negotiated for the construction of the concrete pads before Bains purchased the house, while having knowledge of the Declaration which it created as the subdivision builder. Further, after Bains closed on the house, KB Home paid for the installation of a drainage system to prevent water from draining off the concrete pads onto Bains's neighbors' property. Bains subsequently moved for summary judgment, contending that (1) Article V does not require ACC approval for the concrete ground cover at issue because it is not a "structure;" and (2) even if the ground cover was a structure prohibited by Article V, the Association impliedly waived enforcement of the restrictive covenant because 45 other Stage Run homeowners added stone or concrete as ground cover to their lots without ACC approval. Bains attached his affidavit along with photos of 45 houses in the subdivision with added concrete ground cover visible from the street.

The Association responded, contending that Bains's own deposition established that the ground covers were a structure as contemplated by Article V of the Declaration. The Association also filed the affidavit of its manager, Laurinda Beaver, who stated that only two other lots in the subdivision had non-approved concrete ground cover, and that the Association had notified those homeowners that they were in violation of the Declaration. Bains filed a motion to disregard Beaver's affidavit, arguing that it contradicted her later deposition testimony in which she stated she did not know how many lots had non-approved ground cover, but that it was more than two. The trial court heard the motion for summary judgment, and after receiving photographs of the ground cover on Bains's property, granted Bains's amended motion for partial summary judgment on the grounds of waiver and inapplicability of the Declaration to ground cover. The trial court did not rule on Bains's motion to disregard Laurinda Beaver's

affidavit. After the motion for partial summary judgment was granted, an agreed take-nothing judgment was rendered as to KB Home, and Bains's third-party action was dismissed with prejudice. The judgment states that "in light of the court's granting of a partial summary judgment on liability issues in favor of Third-Party Plaintiffs, the Bains, and against Plaintiff Stage Run Owners Association, Inc., a take-nothing judgment should also be entered in favor or Third-Party Defendant KB Home Lone Star, L.P."

The parties proceeded to trial on the sole remaining issue of attorney's fees. The amount of the fees was stipulated. The trial court awarded $17,500 in attorney's fees to Bains under the Declaratory Judgment Act, as well as conditional appellate fees. The trial court rendered a final and appealable judgment.

The Association now appeals, complaining of the summary judgment and award of attorney's fees. Bains filed a notice of cross-appeal, challenging the trial court's failure to disregard the affidavit of Laurinda Beaver, and, in the event that any of the Association's issues are sustained, the take-nothing judgment as to KB Home.

### STANDARD OF REVIEW AND APPLICABLE LAW

A ruling on a traditional motion for summary judgment is subject to de novo review. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is appropriate only when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Tex. Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 252 (Tex. 2002). Therefore, a traditional motion for summary judgment is properly granted if the defendant disproves at least one essential element of the plaintiff's cause of action, or establishes all essential elements of an affirmative defense. *See D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). If the movant is successful in establishing its right to judgment as

a matter of law, the burden then shifts to the non-movant to produce evidence raising a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). In reviewing a traditional motion for summary judgment, we resolve every doubt and indulge every reasonable inference in the nonmovant's favor. *SW Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). All evidence favorable to the nonmovant will be taken as true. *Id.*

We review the trial court's construction of a restrictive covenant *de novo. Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 667 (Tex. App.—San Antonio 2008, no pet.); *Owens v. Ousey*, 241 S.W.3d 124, 129 (Tex. App.—Austin 2007, pet. denied). "[R]estrictive covenants are subject to the general rules of contract construction." *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998); *see also Sonterra Capital Partners, Ltd. v. Sonterra Prop. Owners Ass'n, Inc.*, 216 S.W.3d 417, 420–21 (Tex. App.—San Antonio 2006, no pet.). Covenants are examined as a whole in light of the circumstances present when the parties entered into the agreement. *Pilarcik*, 966 S.W.2d at 478. We give effect to every sentence, clause, and word of a covenant, and avoid constructions that would render parts of the covenant superfluous or inoperative. *Owens*, 241 S.W.3d at 129–30. The reviewing court's primary intent is to ascertain and give effect to the true intention of the parties as expressed in the instruments. *Id.* Restrictive covenants are liberally construed to effectuate their purposes and intent; however, any doubts are resolved in favor of the free and unrestricted use of the premises. *See* TEX. PROP. CODE ANN. § 202.003(a) (West 2007); *Sonterra Capital Partners*, 216 S.W.3d at 420.

Whether a restrictive covenant is ambiguous is a matter of law for the court to decide. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003); *Pilarcik,* 966 S.W.2d at 478. A covenant is unambiguous if, after appropriate rules of

construction have been applied, the covenant can be given a definite or certain legal meaning. *Pilarcik*, 966 S.W.2d at 478; *Pitman v. Lightfoot*, 937 S.W.2d 496, 517 (Tex. App.—San Antonio 1996, writ denied) (holding same concerning contracts generally). In contrast, if, after appropriate rules of construction have been applied, a covenant is susceptible of more than one reasonable interpretation, the covenant is ambiguous. *Pilarcik*, 966 S.W.2d at 478. Summary judgment is improper where a restrictive covenant is ambiguous because the interpretation of an ambiguous contract is a question of fact for a jury. *See Dynamic Publ'g & Distrib. L.L.C. v. Unitec Indus. Ctr. Prop. Owners Assoc.*, *Inc.*, 167 S.W.3d 341, 345 (Tex. App.—San Antonio 2005, no pet.). Mere disagreement over a restrictive covenant's interpretation does not necessarily render the covenant ambiguous. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006); *Hodas v. Scenic Oaks Prop. Ass'n*, 21 S.W.3d 524, 528 (Tex. App.—San Antonio 2000, pet. denied).

**DISCUSSION**

### *Applicability of Article V of the Declaration*

The Association first contends the trial court erred in finding the large areas of concrete ground cover are not 'structures' and thus do not require approval by the ACC. The Texas Supreme Court has noted that the word 'structure' can be used in either a broad or restricted sense. *Stewart v. Welsh*, 142 Tex. 314, 178 S.W.2d 506, 508 (1944); *see also Voice of the Cornerstone Church Corp. v. Pizza Prop. Partners*, 160 S.W.3d 657, 669 (Tex. App.—Austin 2005, no pet.). The broad definition is: "Any production or piece of work artificially built up, or composed of parts joined together in some definite manner; any construction." *Stewart*, 178 S.W.2d at 508. The restricted definition of 'structure' is: "A building of any kind, chiefly a building of some size or of magnificence; an edifice." *Id*. The Association advocates for a broad

- 6 -

application of the term 'structure,' which includes "any construction." It points to excerpts from Bains's deposition, in which he testified that it took about three weeks to erect the ground cover, which consisted of framing of areas with wooden forms, installation of metal mesh, drilling of holes into the foundation of the house to tie the ground cover to the house, and pouring and leveling of concrete. Because Bains admitted to constructing the concrete pads from components, the Association maintains that they are structures requiring ACC approval.

The Association cites several Texas cases to support its argument that the ground cover is a structure. Aside from choosing between a broad or narrow definition of 'structure,' the cases all focus on the intent of the drafters when construing the restriction at issue. In *Stewart*, the court held that a fence was a structure falling within a restrictive covenant prohibiting a "structure of any kind" from being built on a utility easement. *Stewart*, 178 S.W.2d at 507–08. The *Stewart* court reached this conclusion after considering the intent of the restrictive covenant, which was to prevent the construction of a house, building, or other substantial structure on the utility easement because any such house, building, or other structure would likely interfere with the free use of the area for the installation and maintenance of water, gas, sewer, light, power and telephone lines. *Id*. at 508. Because the fence was seven-feet high and built from rails, pickets, and posts set in the ground, it constituted a "material obstacle to the use of the reserved area for its intended purpose." *Id*. In *DeNina v. Bammell Forest Civic Club, Inc*., 712 S.W.2d 195, 198 (Tex. App.—Houston [14th Dist.] 1987, no writ), the appellate court examined whether a thirteen-foot diameter satellite disc and its poured-cement base violated a provision of a deed restriction which provided that all subdivision lots must be used for residential purposes and that no structure could be built or placed on the lot other than a single-family home and a garage. *Id*. at 198. The *DeNina* court held that the satellite disc was not a structure because it was not a

multi-family residence, and the purpose of the particular deed restriction was to limit residences within the subdivision to single-family residences.[2]  *Id.*  Most recently, the Austin Court of Appeals held that a baptismal pool violated a restrictive covenant prohibiting "subsurface structures." *Voice of the Cornerstone Church*, 160 S.W.3d at 662, 669.  In reaching its decision, the court considered the entire covenant, which provided that the property was to be used for "commercial/light industrial" purposes, as well as the fact that the baptismal pool was created by converting an in-ground petroleum tank into a four-and-a-half feet deep pool with concrete walls and floor.  *Id.* at 669.

Bains responds that when looking at the restrictive covenant as a whole, it is clear the drafters did not intend to prohibit concrete ground cover.  Relying on the rule *expressio unius est exclusion alterius* (the express mention of one thing is tantamount to the exclusion of all others), Bains infers that because Article V specifically lists 13 items which require ACC approval, yet does not include a sidewalk or patio, the drafters must have intended to exclude ground cover.  Further, Bains suggests that here the word "structure" refers to something more substantial than poured concrete and applies to above-ground structures, not ground cover.  In support, he points to *Turner v. England*, in which the Eastland Court of Appeals held that a concrete tennis court slab was not a 'structure' prohibited by a 50-foot setback line.  *Turner v. England*, 628 S.W.2d 213, 214 n.3, 216 (Tex. App.—Eastland 1982, writ ref'd).  *Turner* noted that there was no contention that street lights, fences, stone walls, and paved driveways closer than 50 feet to the street were "structures."  *Id.* at 215.  Bains urges us to strictly construe the restrictive covenant against the Association, and to resolve any doubts in favor of the free use of the premises.

---

[2] The *DeNina* court went on to hold that the satellite disc violated another section of the deed restriction prohibiting electrical antenna.  *Id.* at 198-99.

In construing the restrictive covenant, our primary task is to determine the intent of its drafters. *Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. 1987). Here, the Declaration states that it was created for the purpose of "enhancing and protecting the value, desirability and attractiveness of [the subdivision]." Mindful of this, it is apparent that the drafters of the Declaration intended to require ACC approval for exterior modifications to the property. Bains admitted that the ground cover was installed by framing areas with wooden forms, installing metal mesh, drilling holes into the foundation of the house to tie the ground cover to the house, and pouring and leveling concrete. Clearly, these actions constitute modifying the exterior of Bains's property. Because the concrete ground cover installed by Bains is an exterior modification, we conclude it falls within Article V of the Declaration. Accordingly, we hold as a matter of law that the concrete ground cover constructed by Bains is a structure falling within Article V of the Declaration. Thus, we sustain the Association's first issue, and reverse the summary judgment in favor of Bains on this ground.

*Waiver*

The Association next argues that Bains did not establish his claim of waiver as a matter of law. In order to establish the affirmative defense of waiver in a deed restriction case, the non-conforming user must prove that the violations then existing are so great as to lead the mind of the "average man" to reasonably conclude that the restriction in question has been abandoned and its enforcement waived. *New Jerusalem Baptist Church, Inc. v. City of Houston*, 598 S.W.2d 666, 669 (Tex. App.—Houston [14th Dist.] 1980, no writ). Among the factors to be considered by the "average man" are the number, nature, and severity of the then existing violations, any prior acts of enforcement of the restriction, and whether it is still possible to

realize to a substantial degree the benefits intended through the covenant. *Id*.; *Pebble Beach Prop. Owners' Ass'n v. Sherer*, 2 S.W.3d 283, 290 (Tex. App.—San Antonio 1999, pet. denied).

Bains submitted his affidavit along with photographs of 45 other homes in the Stage Run subdivision with added concrete ground cover or stone flat work. These photographs alone, however, cannot establish that the Association waived enforcement of the Declaration. First, it is unknown whether the additions were made after the houses were purchased from KB Home. Further, Bains does not provide any information as to whether the owners of these houses requested ACC approval, nor does he offer any testimony to show that the ACC did not approve the additions. Even assuming the affidavit of Laurinda Beaver was struck, as Bains argues it should have been, the photographs do not amount to more than a scintilla of evidence that the Association waived enforcement of Article V. We conclude Bains failed to conclusively establish his affirmative defense of waiver as a matter of law. Accordingly, summary judgment on the ground of waiver was improper. *See D. Houston*, 92 S.W.3d at 454. Because the award of attorney's fees was premised on the granting of summary judgment in Bains's favor, we also reverse the award of attorney's fees. We sustain the Association's second and third issues, reverse the summary judgment on the ground of waiver, and remand the cause to the trial court for further proceedings.

### *Cross-Appeal: Third Party Action Against KB Home*

In his issue on cross-appeal, Bains requests that in the event we remand the cause, we also reverse and remand the dismissal of his third-party action against KB Home. If a trial is necessary, Bains plans to assert that any violation of a restrictive covenant was with the express approval of KB Home and was caused by the false representations to Bains by KB Home's superintendent, and to seek damages and indemnity or contribution from KB Home. Since

Bains's rights against KB Home derive from the Association's rights against Bains, Bains claims a remand of the third-party action is necessary.

The order dismissing KB Home was premised on the granting of summary judgment on the liability issues in Bains's favor. Because we are now reversing the order granting partial summary judgment and remanding the cause to the trial court, we agree that Bains should be permitted to pursue his claims for indemnity or contribution against KB Home. Accordingly, we also reverse the dismissal order, and remand the cause to the trial court for further proceedings.

## CONCLUSION

Both the order granting partial summary judgment and the order granting attorney's fees to Bains are reversed. Additionally, we reverse the order rendering a take-nothing judgment as to KB Home. The cause is remanded to the trial court for further proceedings.

Phylis J. Speedlin, Justice