

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00170-CV

———————————————

ENERGY TRANSFER FUEL, L.P., A TEXAS LIMITED PARTNERSHIP,
Appellant

V.

660 NORTH FREEWAY, LLC, A TEXAS LIMITED LIABILITY COMPANY; AND
TINDALL PROPERTIES, LTD., A TEXAS LIMITED PARTNERSHIP, Appellees

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-311391-19

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

In this appeal, we are asked to decide whether an oil-and-gas easement agreement allowed the surface owner's lessee to pour concrete paving over the easement. We conclude that the easement agreement's plain terms allowed the paving and that the Health and Safety Code's provisions do not apply to otherwise prohibit it. Accordingly, we affirm the trial court's summary judgment so declaring.

## I. BACKGROUND

The operative facts are largely undisputed. We recount them to give context and support for our substantive discussion.

### A. FACTUAL BACKGROUND

In 1988, Chevron Pipe Line Company obtained a right-of-way, twenty-foot-wide easement (the easement strip) for the construction and maintenance of an oil-and-gas pipeline "within and across" an approximately 14-acre tract of land in Fort Worth; at the time, California–Texas Properties, Inc. owned the land. The easement agreement specified the parties' rights and obligations as relevant to the instant dispute:

> • Term 3 provided that the easement holder "shall, as practicable, restore land, vegetation and improvements which may be removed, altered or damaged by the exercise of the rights herein granted, however, where complete restoration cannot be made any actual losses incurred are settled with the valuable consideration for the easement."
>
> • Term 4 stated that the easement holder "shall pay the then OWNER of the land and/or tenant or lessee thereof, as their respective interests may appear, for any future actual losses, where complete restoration cannot be made to

2

fences, improvements, growing crops and timber which may be caused by the exercise of the rights, privileges and easements herein granted."

• Term 6 dictated that the owner "hereby reserves the right to use the land in any manner that will not prevent or interfere with the exercise by [the easement holder] of its rights, privileges and easements hereunder, provided, however, that OWNER shall not construct or permit to be constructed any house, building or structure of any kind whatsoever on the easement."

At some point, appellee 660 North Freeway, LLC became the owner of five acres of the tract (the 660 lot) and, in 2017, granted a ground lease to appellee Tindall Properties, Ltd. 660 North Freeway and Tindall Properties have the same president—J. Scott Tindall. The eastern edge of the 660 lot is encumbered with part of the easement strip. In 2004, appellant Energy Transfer Fuel, L.P. (ETF) acquired Chevron's easement by assignment and began operating and maintaining a high-pressure, natural-gas pipeline under the easement strip.

In mid-2019, Tindall Properties prepared to build a "multi[-]level self[-]storage complex" on the 660 lot, and the project's plans included pouring a six-inch concrete slab on the easement strip.[1] Tindall Properties' contractor notified ETF of the planned construction. ETF, believing that the easement agreement did not allow the paving, sent Scott Tindall a cease-and-desist letter, asserting that the proposed paving created a "potentially dangerous or unsafe condition" and requesting that the slab be redesigned. ETF later asked him to sign an "encroachment agreement," which would

---

[1]Tindall Properties also notified ETF that it would "cross" the easement with a storm-water storage culvert. The parties' dispute does not involve the proposed culvert.

require Tindall Properties to add "bollards to protect the pipeline" before pouring the slab.

## B. PROCEDURAL BACKGROUND

Believing that the easement agreement allowed the paving over a portion of the easement strip, Tindall Properties and 660 North Freeway (collectively and singularly, Tindall) sued ETF under the Uniform Declaratory Judgments Act (the UDJA) for declarations of the parties' rights under the easement agreement and of the inapplicability of the hazardous-conditions provisions in the Health and Safety Code (HSC) to its planned paving on the 660 lot. Tindall filed a traditional motion for partial summary judgment,[2] arguing that the unambiguous easement agreement allowed improvements on the easement strip, the planned paving would not be a prohibited structure, the paving would not interfere with ETF's rights, and the HSC did not apply to the dispute.[3]

The HSC's hazardous-conditions provisions are found in Chapter 756. Specifically, Subchapter H governs construction affecting oil-and-gas pipeline easements and rights-of-way. Tex. Health & Safety Code Ann. §§ 756.121–.126. Tindall relied on Section 756.122(a), which dictates that Subchapter H applies "to a

_____

[2]Presumably, the motion sought only a partial summary judgment because Tindall did not address its UDJA attorney's fees and costs in its motion.

[3]Tindall raised the HSC because ETF had raised the issue in discovery. In response, Tindall had amended its petition to request declarations regarding the applicability of the HSC.

4

construction or the repair, replacement, or maintenance of a construction unless there is a written agreement . . . to the contrary between the owner or operator of the affected pipeline facility and the person that . . . causes a construction to be placed on the easement or right-of-way of a pipeline facility." *Id.* § 756.122(a). Tindall asserted that the easement agreement was a written agreement to the contrary, taking its construction outside the purview of Subchapter H as a matter of law. Similarly, Tindall referred to Section 756.123, which prohibits construction "on, across, over, or under the easement or right-of-way" unless the operator of the pipeline facility is given notice of the construction and "the building, repair, replacement, or maintenance is conducted under an existing written agreement." *Id.* § 756.123(3). Tindall argued that the easement agreement was an existing written agreement that placed the proposed construction outside Section 756.123's construction prohibition.

ETF sought a partial, traditional summary judgment,[4] essentially contending the opposite of Tindall—the easement agreement prohibits structures, which would include the proposed paving; the paving would violate the HSC; and the paving would interfere with ETF's ability to operate and maintain its pipeline. ETF attached two affidavits to its motion. The first affidavit was by Celeste Waterwall, ETF's "Encroachment Supervisor and Project Manager," who averred that the proposed paving would violate Section 756.123 and would interfere with ETF's rights under the

---

[4]ETF sought a partial summary judgment based on its unaddressed claim for reasonable and necessary attorney's fees and costs under the UDJA.

easement agreement. The second affidavit was by Nicholas Gordon, ETF's "Project Manager," who stated that ETF could not maintain its pipeline unless protective bollards or "green spaces" were added to the proposed construction. In response to ETF's motion, Tindall objected to Waterwall's and Gordon's affidavits because they constituted improper parol evidence of an unambiguous contract, were conclusory, did not establish personal knowledge, and were incompetent expert opinions.

The parties stipulated that once the summary-judgment motions were determined, the only remaining issue would be the reasonable and necessary attorney's fees and costs under the UDJA. They further stipulated to the amount of such fees and costs for either party.

The trial court sustained Tindall's objections to Waterwall's and Gordon's affidavits and denied ETF's motion. The trial court granted the majority of Tindall's motion and made the following declarations regarding the effect of the easement agreement on Tindall's proposed plans:

> a. the Agreement does not prohibit the landowner's construction of improvements on the Easement Strip, subject to the Agreement's prohibition on constructing houses, building, or structures;
>
> b. the Agreement permits the landowner to construct a six-inch concrete slab, which is not a prohibited "house, building, or structure," on the Easement Strip; and
>
> c. non-prohibited improvements do not "interfere" with the easement beneficiary's exercise of its rights under Agreement Term 6 on the sole basis that they may require restoration or result in compensation to the landowner for actual losses under Agreement Term 4. [Footnote omitted.]

6

Regarding the application of the HSC, the trial court declared that

a. the Agreement is a written agreement between ETF, which owns or operates the pipeline facility at issue in this action, and Plaintiffs [i.e., Tindall Properties and 660 North Freeway], who are persons causing construction to be placed on ETF's pipeline easement, within the meaning of [Section] 756.122(a);

b. the Agreement expressly provides terms setting forth the parties' respective rights and obligations relating to construction on the strip of land covered thereby;

c. because the Agreement expressly provides terms setting forth the parties' respective rights and obligations relating to construction on the Easement Strip, Subchapter H of [HSC] Ch. 756 does not apply to Plaintiffs' [i.e., Tindall Properties and 660 North Freeway's] planned paving; and

d. the Agreement is an "existing written agreement" under [Section] 756.123.

Because the trial court did not make the specific declaration pleaded for by Tindall that "constructing and leaving in place the proposed 6-inch concrete slab does not interfere with the easement beneficiary's exercise of its Easement rights," Tindall noticed its nonsuit of this requested declaration. *See* Tex. R. Civ. P. 162, 165. Accordingly, the trial court signed a final judgment awarding Tindall the stipulated attorney's fees and costs and restating the declarations that had been made in the summary-judgment order.

ETF argues on appeal that the trial court's summary-judgment rulings were in error because the HSC prohibits Tindall's paving over the easement strip; the easement agreement prohibited interference with ETF's rights; and the agreement

7

prohibited the construction of any type of structure, including concrete paving. ETF also challenges the trial court's exclusion of its summary-judgment evidence.

## II. PROPRIETY OF SUMMARY DECLARATORY JUDGMENT

### A. STANDARD OF REVIEW

We review a trial court's granting of a summary declaratory judgment de novo under the well-established summary-judgment review standard. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.010; *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 449 (Tex. 2015) (op. on reh'g). Here, the parties filed cross-motions for summary judgment; therefore, we consider the entire record and determine whether the summary-judgment evidence raised genuine issues of material fact on each element of the challenged claim and on all questions presented by the parties. *See* Tex. R. Civ. P. 166a(c); *Tarr v. Timberwood Park Owners Assoc., Inc.*, 556 S.W.3d 274, 278–79 (Tex. 2018) (citing *City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 356 (Tex. 2000) (plurality op.)). Our "ultimate question is simply whether a fact issue exists." *Buck v. Palmer*, 381 S.W.3d 525, 527 n.2 (Tex. 2012) (per curiam). We will affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *See Colo. Cnty. v. Staff*, 510 S.W.3d 435, 444 (Tex. 2017); *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625–27 (Tex. 1996).

### B. APPLICATION OF EASEMENT AGREEMENT

ETF contends that the trial court erred by declaring in its summary judgment that the easement agreement did not prohibit Tindall's paving over the easement strip.

ETF points to Term 6 and its provisions that Tindall would not interfere with ETF's rights in the easement and that construction of any "structure of any kind whatsoever on the easement" was prohibited. ETF contends that the paving interfered with its rights to the easement strip and constituted a prohibited structure.

ETF and Tindall do not argue that the easement agreement is ambiguous. Accordingly, we construe the agreement as a matter of law to give effect to the parties' intent as shown in the contractual language. *Northland Indus., Inc. v. Kouba*, No. 19-0835, 2020 WL 6255405, at *3 (Tex. Oct. 23, 2020); *cf. Burlington Res. Oil & Gas Co. v. Tex. Crude Energy, LLC*, 573 S.W.3d 198, 200 (Tex. 2019) (holding, in the context of royalty interests under an oil-and-gas lease, that prior opinions interpreting such leases "serve as informative guides . . . , but the decisive factor in each case is the language chosen by the parties to express their agreement"). *See generally DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999) (recognizing contract-interpretation and -construction rules apply to easement agreements). We determine the parties' intent by looking at the contractual context as a whole and giving the words their reasonable meaning. *Northland Indus.*, 2020 WL 6255405, at *3. "Absent absurdity, contracts must be interpreted according to their literal terms." *Id.*

9

### 1. Structure Prohibition

Term 6 prohibits construction of a "house, building or structure of any kind whatsoever on the easement." Terms 3 and 4 addressed measures to be taken regarding improvements on the easement strip. The terms "improvement" and "structure" are not defined in the easement agreement; however, ETF contends that improvements are "broader" than structures because "[a]ll structures are improvements, but not all improvements are structures." We may consult dictionaries to discern the plain meaning of a contractually undefined term. *Sunstate Equip. Co. v. Hegar*, 601 S.W.3d 685, 697 (Tex. 2020).

The Texas Supreme Court has "broadly" defined an improvement as including "all additions to the freehold except for trade fixtures [that] can be removed without injury to the property." *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 49 (Tex. 2015) (quoting *Sonnier v. Chisholm-Ryder Co.*, 909 S.W.2d 475, 479 (Tex. 1995)). The common definition of improvement is similarly broad, defining the term as "[a]n addition to property." *Improvement*, Black's Law Dictionary (11th ed. 2019).

Structure is defined broadly as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together." *Structure*, Black's Law Dictionary (11th ed. 2019); *see also Stewart v. Welsh*, 178 S.W.2d 506, 508 (Tex. [Comm'n Op.] 1944); *Abel v. Bryant*, 353 S.W.2d 322, 324 (Tex. App.—Austin 1962, no writ). In some contexts, however, structure is defined more narrowly as a "building of any kind, chiefly a building of some size or of magnificence; an edifice."

10

*Stewart*, 178 S.W.2d at 317; *see also Structure*, Merriam-Webster Dictionary, http://merriam-webster.com/dictionary/structure (last visited Apr. 15, 2021) (defining "structure" as "something (such as a building) that is constructed").

ETF argues that we should apply the broad definition of structure because of the phrase "of any kind whatsoever" included in Term 6's prohibition of construction of "any house, building or structure of any kind whatsoever on the easement." Tindall argues the narrow definition should apply because the entirety of the easement agreement shows that the parties intended for structures to be different in kind from improvements and because a structure was equated to a house or building in Term 6.[5] We agree with Tindall.[6]

To apply the broad definition of structure here would result in all improvements being structures, ignoring the context of the easement agreement. Term 6 absolutely prohibits "any house, building or structure of any kind whatsoever" on the easement strip; but improvements are contemplated in Terms 3 and 4. The plain language of the easement agreement shows that the parties intended that

---

[5]Tindall seems to concede that if a broad definition of structure is applied here, the paving would be considered a prohibited structure. Similarly, ETF seems to recognize that the paving would not be a prohibited structure if the narrow definition is applied.

[6]The parties discuss multiple cases, including *Stewart v. Welsh*, in which courts held a broad or narrow definition of structure should apply and, thereby, determined whether different categories of property additions were or were not structures. However, we must focus on the contractual language in this case and not on other case-specific, fact-based holdings. *See Burlington Res.*, 573 S.W.3d at 200.

11

structures and improvements be treated differently and, thus, to have different meanings. *See, e.g.*, *DaimlerChrylser Motors Co. v. Manuel*, 362 S.W.3d 160, 185 (Tex. App.—Fort Worth 2012, no pet.) (holding context of agreement showed separate terms could not have same meaning because one or the other term would be rendered meaningless or redundant); *Voice of Cornerstone Church Corp. v. Pizza Prop. Partners*, 160 S.W.3d 657, 669 (Tex. App.—Austin 2005, no pet.) (determining whether broad or narrow meaning of structure based on the context and purpose of agreement). Further, the phrase "house, building or structure of any kind whatsoever" indicates grammatically that the parties intended a "structure of any kind whatsoever" to be similar to and the equivalent of the unmodified "building" prohibition. *See Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 131 (Tex. 2018) ("Punctuation can be helpful, and even determinative, when construing statutes and other written texts."); *cf. Sullivan v. Abraham*, 488 S.W.3d 294, 297–99 (Tex. 2016) (recognizing that absence of serial comma between second and third statutory terms in a series could indicate that third term and its modifying phrase should be interpreted in light of second term).

Concrete paving is an improvement—an addition—on the easement strip; but based on the narrow meaning of structure, which the easement agreement's plain language shows the parties intended to apply, concrete paving cannot be classified as a structure. And as an improvement, the paving is governed by Terms 3 and 4, not the absolute prohibition of Term 6. Thus, contrary to ETF's arguments, Term 6 did not

apply to prohibit the paving, and the trial court did not err by so declaring. We overrule ETF's third issue.

## 2. Interference

ETF also asserts that the trial court erred by rendering final judgment because it failed to determine whether the paving interfered with ETF's rights in the easement strip, thereby violating Term 6. In other words, ETF contends that because Tindall was prohibited from any construction that interfered with ETF's easement rights, no matter the characterization of the construction, the trial court was required to determine if the paving interfered with ETF's easement rights. ETF asserts that an interference declaration was necessary because Tindall specifically requested declarations that the paving did not interfere with ETF's rights and, separately, that it was not a prohibited structure.[7]

Tindall asked for two declarations regarding Term 6's interference prohibition: (1) "non-prohibited improvements do not 'interfere' with the easement beneficiary's exercise of its Easement rights under Easement term 6 on the sole basis that they may require restoration or result in compensation to the landowner for actual losses under Easement term 4" and (2) "constructing and leaving in place the proposed 6-inch

---

[7]ETF also argues that Tindall's nonsuit of its requested interference declaration was ineffective to remove the issue from consideration. Tindall does not rely on its nonsuit in its argument that an interference declaration was unnecessary. Based on our ultimate conclusion regarding interference, we need not determine the propriety or effect of the nonsuit here.

13

concrete slab does not interfere with the easement beneficiary's exercise of its Easement rights." Tindall describes these two requests as a "belt-and-suspenders approach" and points out that it argued noninterference as a single issue in the trial court. ETF argued that "construction of a concrete pad over the entire Easement interferes with ETF's ability to inspect, maintain, test[,] or repair its pipeline." The trial court, however, declared that nonprohibited improvements do not interfere with ETF's rights under Term 6 merely because they require restoration or compensation under Term 4.[8]

The plain language of the easement agreement belies ETF's argument. Terms 3 and 4 give ETF the right to remove all or part of an improvement—here, Tindall Properties' paving—as needed to test, maintain, or repair its pipeline, subject to ETF's obligation to restore the paving or to compensate Tindall. Accordingly, an improvement, like paving, does not interfere with ETF's easement rights based on Terms 3 and 4. A separate declaration that the paving did not interfere with ETF's rights under the easement agreement was subsumed into the trial court's other declarations regarding the interpretation and application of the easement agreement. We overrule ETF's second issue.

---

[8]ETF does not challenge this declaration.

14

## C. APPLICATION OF THE HSC

ETF contends that the trial court erred by granting summary judgment declaring that the HSC did not apply to the paving on the basis that the easement agreement was an existing written agreement governing construction on the easement strip. For the following reasons, we disagree and overrule ETF's first issue.

### 1. Construction Precepts

This issue, arising in the context of cross-motions for summary judgment, requires a construction of the implicated statutes in light of undisputed material facts. *See Colo. Cnty.*, 510 S.W.3d at 444. But because statutory construction presents a question of law, we determine the statutory issue de novo (as in a summary-judgment review) under statutory-construction principles. *Id.*; *Paxton v. City of Dall.*, 509 S.W.3d 247, 256 (Tex. 2017).

In construing a statute, our overarching objective is to give effect to the Legislature's intent. *See Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015). "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). But we are not allowed to rewrite a statute's clear words under the guise of interpretation and may not look beyond its plain language unless the statutory text is ambiguous or if its plain meaning would lead to nonsensical results. *See EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 749 (Tex. 2020); *Hegar v. Am. Multi-Cinema, Inc.*, 605 S.W.3d 35, 41

(Tex. 2020); *Colo. Cnty.*, 510 S.W.3d at 444. Here, ETF does not argue that the relevant sections of the HSC are ambiguous.

## 2. Written Agreement

As we previously discussed, Chapter 756, Subchapter H of the HSC restricts construction affecting pipeline easements and rights-of-way "*unless* there is a written agreement . . . to the contrary between the owner or operator of the affected pipeline facility and the person that places or causes a construction to be placed on the easement." Tex. Health & Safety Code Ann. § 756.122(a) (emphasis added).

### a. Between pipeline operator and constructing party

ETF argues that the easement agreement cannot be considered a written agreement under this section because it was not between ETF "and the person that places or causes a construction to be placed on the easement or right-of-way of a pipeline facility"—Tindall Properties. *Id.* ETF avers that, at most, the easement agreement was between ETF and 660 North Freeway, not Tindall Properties. But the trial court declared that both Tindall Properties and 660 North Freeway had "rights, obligations, or interests" in the easement agreement. ETF does not challenge this declaration, and we are thus bound by it. *See City of Helotes v. Cont'l Homes of Tex., LP*, No. 04-15-00571-CV, 2016 WL 3085924, at *5 (Tex. App.—San Antonio June 1, 2016, no pet.) (mem. op.) ("Because the trial court's declaration pertaining to Ordinance 505 is not challenged on appeal, this court is bound by and must follow this declaration.").

16

Even so, 660 North Freeway conveyed its surface interest in the 660 lot to Tindall Properties "subject to all exceptions of record," which would include the recorded easement agreement.[9] Just as ETF acquired its interest in the easement agreement through an assignment that was "subject to any and all exceptions," so did Tindall Properties through the ground lease. And the easement agreement provided that it was granted to Chevron's "successors and assigns," which would include Tindall Properties as 660 North Freeway's lessee. *Cf. Schwendeman v. BT SFRL I, LLC*, No. 02-19-00007-CV, 2020 WL 479592, at *8 (Tex. App.—Fort Worth Jan. 30, 2020, pet. denied) (mem. op.) ("Once created, [an easement by estoppel] is binding upon the owner of the servient estate and his successors in interest if they had notice—actual or constructive—of the easement claimed."). Finally, Term 4 of the easement agreement provided that 660 North Freeway's lessee—Tindall Properties—had an interest in any restoration payments ETF owed under the agreement.

We conclude that even if we were not bound by the trial court's unchallenged declaration that Tindall Properties had rights, duties, and obligations under the easement agreement, the assignments, the easement agreement, and the ground lease reflect that the easement agreement was effectively between the pipeline operator and the person that caused a construction to be placed on the easement strip. *See* Tex. Health & Safety Code Ann. § 756.122(a).

---

[9]Both the easement agreement and the ground lease were recorded in Tarrant County. *See* Tex. Prop. Code Ann. § 13.002.

### b. Contrary to Subchapter H

ETF next asserts that even if the easement agreement were a written agreement between ETF and Tindall Properties, the easement agreement was not "contrary" to Subchapter H. Under ETF's interpretation of Section 756.123(1), the paving would be barred by ETF's determination that such paving is a risk to its pipeline facility; however, the easement agreement allows such construction and is thus "contrary to" that section. *See id.* § 756.123(1). Accordingly, even under ETF's arguments, the written agreement allowing the paving would be contrary to Subchapter H. Further, Subchapter H requires a constructor to pay for changes needed to protect the public or pipeline facility from risks created by the construction, but the easement agreement makes ETF responsible for those costs; thus, the agreement is contrary to this provision in Subchapter H. *See id.* § 756.123(2). Accordingly, we conclude that the easement agreement is a written agreement to the contrary that renders Chapter 756, Subchapter H of the HSC inapplicable to Tindall's construction on the easement strip. *See id.* § 756.122(a).

### c. Determination of risk to the public or the pipeline

ETF next asserts that because the easement agreement did not specify that construction could proceed even under circumstances presenting increased risk to public health and safety, the easement agreement cannot be considered "an existing written agreement" allowing the construction. *Id.* § 756.123(1), (3). But Section 756.123 applies only if Subchapter H applies. We have already determined that

18

Subchapter H does not apply to Tindall's construction on the easement strip based on the easement agreement; thus, we need not address this argument.[10]

### 3. Policy Argument

ETF argues that the trial court's declarations concluding that Subchapter H does not apply to Tindall's paving negate the safety purposes of the HSC and "the common law protecting easement holders." But Subchapter H expressly contemplates that parties to a pipeline easement should be allowed to enter into written agreements contrary to its provisions. *See id.* §§ 756.122(a), 756.123(3). This statutory freedom to contract reflects a strong public policy. *See Tex. Com. Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 250 (Tex. 2002) ("[T]he State's public policy is reflected in its statutes."); *see also Energy Transfer Partners, L.P. v. Enter. Prods. Partners, L.P.*, 593 S.W.3d 732, 740 (Tex. 2019) ("[P]erhaps no principle of law is as deeply engrained in Texas jurisprudence as freedom of contract."). Merely because the easement agreement is not as protective of ETF's interest in the easement strip as ETF would now wish does not render the agreement, or the trial court's declarations, against public policy. *See generally Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649 (Tex. 2007) (emphasizing State's public policy in favor of the right to contract); *Indian Oil Co. v. Bishop Petroleum Inc.*, 406 S.W.3d 644, 649 (Tex. App.—Houston [14th Dist.] 2013, pet.

---

[10]Even if Subchapter H applied, the easement agreement was an existing written agreement under Section 756.123 that seemingly would have allowed the construction even after ETF discovered an alleged public-health or -safety risk. *See* Tex. Health & Safety Code Ann. § 756.123(3).

denied) (recognizing purpose of rule voiding contracts that violate public policy is "not to protect or punish either party to the contract, but to benefit and protect the public"). And as pointed out by Tindall, construing a contract or statute based on its plain language and meaning is not a dangerous public policy; rather, it is the legal standard that we are required to apply here. *See Tex. Health*, 569 S.W.3d at 137.

## III. EXCLUSION OF SUMMARY-JUDGMENT EVIDENCE

ETF contends that the trial court abused its discretion by sustaining Tindall's objections to Waterwall's and Gordon's affidavits. We have determined that the trial court did not err in its construction of the unambiguous easement agreement or by declaring that the HSC was inapplicable. Therefore, ETF cannot establish that the exclusion of the affidavits, even if an abuse of discretion, caused the rendition of an improper summary judgment. *See* Tex. R. App P. 44.1(a); *Infiniti Hotel Grp., LLC v. Patel*, No. 03-09-00610-CV, 2011 WL 1344605, at *2 (Tex. App.—Austin Apr. 8, 2011, pet. denied) (mem. op.); *see also Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001) (op. on reh'g) ("Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted."). We overrule ETF's fourth issue.

## IV. CONCLUSION

The easement agreement was a written agreement between ETF and Tindall Properties that was contrary to Subchapter H, rendering the Subchapter H

requirements inapplicable to the construction on the easement strip. The plain language of the unambiguous easement agreement did not prohibit the paving on the easement strip. Accordingly, the trial court did not err by so declaring and granting summary judgment in favor of Tindall. We affirm the trial court's judgment and order the trial court clerk to release Tindall's cashier's check deposit in lieu of bond to Tindall upon issuance of our mandate. *See* Tex. R. App. P. 18.1, 24.1(c)(1), 24.2(a)(3), 43.2(a); *In re Shopoff Advisors, L.P.*, No. 04-18-00001-CV, 2018 WL 733789, at *1 & n.2 (Tex. App.—San Antonio Feb. 7, 2018, orig. proceeding) (mem. op.).

/s/ Brian Walker

Brian Walker
Justice

Delivered: April 22, 2021